Leslie Douglas ASHLEY and Carolyn Lima, Appellants,

v.

The STATE OF TEXAS et al., Appellees.

No. 20457.

United States Court of Appeals
Fifth Circuit.

June 25, 1963.

Rehearing Denied July 30, 1963.

Clyde W. Woody, Houston, Tex., Lloyd M. Lunsford, South Houston, Tex., for appellants.

Frank Briscoe, Dist. Atty., Samuel H. Robertson, Jr., Asst. Dist. Atty., Houston, Tex., for appellees.

James J. Hippard, Houston, amicus curiae on behalf of Greater Houston Chapter of American Civil Liberties Union.

Before TUTTLE, Chief Judge, JONES, Circuit Judge, and DeVANE, District Judge.

TUTTLE, Chief Judge.

This is an appeal from the denial by the district court of the appellants' petition for habeas corpus based on their allegations that in their trial and conviction for murder and sentence to death, they had been denied constitutional rights under the Fourteenth Amendment to the Federal Constitution.

The facts upon which the appellants base their claim for a new trial in the Texas State Court are not seriously in dispute. The appellants were tried for the murder of a real estate man in the city of Houston, whose killing they admitted, after, or during, a three-party sexual orgy in the office of the deceased. Appellant Ashley was a homosexual and transvestite (he frequently dressed in women's clothes for the purpose of attracting men). Appellant Carolyn Lima was a seventeen year old prostitute, who had been living with Ashley. Both of them had been supported by their earnings in prostitution.

At the time of their trial they asserted only the defense of self defense and defense of each other, claiming that the deceased had become violent in his treatment of Carolyn Lima and a struggle ensued which resulted in his being shot and killed by one or the other of the appellants. No defense of insanity was interposed, although the appellants had engaged a clinical psychiatrist, a Dr. Burch, to examine them prior to trial. Dr. Burch expressed his opinion to Jack Knight, counsel for appellants, "It is my opinion that neither Leslie Douglas Ashley nor Carolyn Lima are now or were at the time of the commission of the alleged crime suffering from psychiatric disorder which could be construed as insanity in a legal sense of the word. They are now and were at the time of the commission of the alleged crime aware of the nature and extent of the act."[1]

The District Attorney for Harris County followed his usual policy on the occasion of the commission of a serious crime by calling on the regularly employed County psychiatrist, Dr. Sher, to examine the appellants, and, without the knowledge of counsel for appellants, engaged a Dr. Howard Crowe, a practicing psychiatrist, to examine both of the appellants. Dr. Crowe was assisted in his examination by a Dr. Jack Tracktir, a psychologist. On March 13, 1961, Dr. Sher made his written report stating that both of them were "of sound mind." The trial commenced on May 15, 1961. It lasted for nine days, being finally concluded on May 24th. The jury found the appellants guilty, and they were sentenced to be electrocuted. On May 25th, Dr. Crowe wrote a letter to the District Attorney which, because of its significance, is copied in full:

"May 25, 1961
"Mr. Frank Briscoe
"District Attorney
"Room 501
"Court and Jail Building
"301 San Jacinto
"Houston, Texas
　　　"Re: Leslie Douglas Ashley
　　　　　　　and
　　　　　Carolyn Ann Lima
"Dear Mr. Briscoe:
　"Dr. Jack Tracktir and I evaluated Leslie Douglas Ashley, white male,

---

[1]. This, of course, is not a comprehensive definition of legal insanity. See Howard v. United States, 5 Cir., 232 F.2d 274.

23 years of age, and Carolyn Ann Lima, 18 years of age, in the Harris County Jail, Houston, Texas March 22, 1961. We felt they were legally incompetent as we understand the laws of Texas referrable to this kind of problem. Again on April 8, 1961 I evaluated Leslie Douglas Ashley and Carolyn Ann Lima alone, and again I felt they were legally incompetent.

"As you may recall I offered to talk with you, and wanted to talk with you, about this prior to their recent trial, and ultimately I discussed this by telephone on the day of the beginning of their recent trial.

"Find attached bill for my services and a bill for Dr. Jack Tracktir's services.

"Respectfully yours,
"Howard G. Crowe, M.D.
"HGC:ds"

Mr. Knight, counsel for the appellants, knew nothing of the examination by Drs. Crowe and Tracktir either during the trial or for a considerable period thereafter. Other counsel subsequently learned of the examination by these two doctors and of their opinions that appellants were legally incompetent, whereupon they moved on December 10, 1962, for a judgment of insanity as to Ashley, for whom alone they had been employed. The inquiry that followed this motion merely touched upon whether Ashley was legally sane at the time of the hearing, approximately eighteen months after the date of the trial and even longer after the time of the alleged crime. On the occasion of this hearing Dr. Crowe testified:

"I felt he exhibited schizophrenia and paranoia and giggling, etc., and I felt it was chronic, and I felt that he was incompetent at that time, and my understanding was that he was legally incompetent in accordance with my definition of the law—as I understand it. I feel that he was insane, and I made a record of it on 3–22–61 and on 4–8–61."

Later on he testified as follows:

"Q. Dr. Crowe, did you report your findings to Mr. Briscoe? [the District Attorney]

"A. Yes, sir, I talked to him about it and I told him in a letter—I stated that I felt Douglas Ashley was incompetent, he was sick and in talking with Mr. Briscoe, I told him that I felt that this man Douglas Ashley needed treatment in a hospital and he was sick and a schizophrenic, and I did that on 3–22–61 and 4–8–61 * * *

"Q. I believe you said you had a discussion with Mr. Briscoe on at least two occasions?

"A. Mr. Briscoe got my findings and professional opinion that Mr. Ashley was a schizophrenic and incompetent to understand what the trial would be about, and I felt that he was chronically ill and had been for a long time, and we discussed this and I wrote him an opinion about Douglas Ashley being incompetent."

Although this testimony was in terms of Ashley's condition only, it is clear in view of Dr. Crowe's letter quoted above that he reported as to both Ashley and Lima on the same dates before trial.

All of the foregoing facts touching the conclusions by Drs. Crowe and Tracktir that the appellants were legally incompetent and that this opinion was communicated to the District Attorney were submitted to the trial court in the petition for habeas corpus filed on March 29, 1963, together with a petition for a stay of execution.

Upon consideration of the application, but without a hearing, the trial court denied the petition and denied the stay of execution. Thereupon, upon application made to Honorable John R. Brown, a member of this Court, a stay of execution was entered pending the final disposition of this case on this appeal. The case thus comes to us with the unan-

swered and undisputed allegations in the petition for the writ of habeas corpus which clearly raised the question whether the failure of the District Attorney to disclose to appellants' counsel the *fact*, known to him, of the existence of opinions arrived at by specialists engaged by the State favorable to the accused if known in time for them to plan the strategy of, and conduct, their trial, is such a denial of due process as to invalidate the trial.

Moreover, here, we need not rely on the legal principle that for the purpose of this appeal we take the allegations in the petition for the writ as true for the purpose of testing the right of the trial court to deny it without a hearing as a basis for assuming the correctness of the underlying facts that posed the constitutional issue. This is so because not only did the State, in its brief in opposition to the grant of certiorari in the Supreme Court of the United States, substantially admit the facts, but counsel for the State, with commendable candor, conceded them in open court during the argument of this case.

In the brief filed on behalf of the State of Texas in the Supreme Court, the following language is found:

" * * * the Harris County District Attorney requested Dr. Benjamin Sher, the Harris County Psychiatrist, Dr. Howard Crow, a psychiatrist, and Dr. Jack Tracktir, a psychologist, to examine both petitioners and each did make such examination * * * Dr. Sher * * reported both petitioners sane. Dr. Crow reported petitioner Ashley 'needed treatment in a hospital, and he was sick and schizophrenic'. Dr. Tracktir 'was able to get the opinion he (Ashley) was psychotic'.

"The opinion of Drs. Crow and Tracktir were made known to the District Attorney prior to the trial of the case, but the District Attorney did not inform the petitioners nor counsel for petitioners of the opinion of each doctor."

During oral argument before this Court, counsel for the State was asked whether it might be conceded that prior to the beginning of the trial of the two appellants, the District Attorney had been informed by Dr. Crowe that in the opinion of himself and Dr. Tracktir the appellants were both legally incompetent, and that this information had not been conveyed to counsel for the appellants. Counsel acquiesced in this statement of the facts.

In Pyle v. Kansas, 317 U.S. 213, 63 S. Ct. 177, 87 L.Ed. 214, the Supreme Court, after having stated that the petition for habeas corpus filed in that case "do(es) set forth allegations that his imprisonment resulted from perjured testimony, knowingly used by the State authorities to obtain his conviction, *and from the deliberate suppression by those same authorities of evidence favorable to him,*" (Emphasis added) said:

"These allegations sufficiently charge a deprivation of rights guaranteed by the Federal Constitution, and, if proven, would entitle petitioner to release from his present custody." Citing Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791.

The Court thereupon remanded the case to the Supreme Court of Kansas to ascertain the truth of "these" allegations. In Alcorta v. Texas, 355 U.S. 28, 78 S. Ct. 103, 2 L.Ed.2d 9, the petitioner had been tried and convicted for murder in the first degree and sentenced to death. His defense was that his wife, whom he had killed, was caught by him with a friend in a compromising situation and that he had killed her under the influence of "sudden passion arising from an adequate cause" which, if established as a defense, would have reduced the killing to murder without malice, punishable by a maximum sentence of five years imprisonment. Before the trial the prosecutor had been told by the friend that he had in fact had improper relations with the deceased, but he was cautioned by the prosecutor to answer all questions honestly, but not to volunteer any such informa-

tion. The testimony on the trial touched rather lightly on the subject; the witness did not testify falsely, and he was not called upon to answer categorically as to whether he had had illicit relations with the deceased wife. In this context, the Supreme Court said:

"Under the general principles laid down by this Court in Mooney v. Holohan, 294 U.S. 103 [55 S.Ct. 340, 79 L.Ed. 791], and Pyle v. Kansas, 317 U.S. 213 [63 S.Ct. 177, 87 L.Ed. 214], petitioner was not accorded due process of law. It cannot seriously be disputed that Castilleja's testimony, taken as a whole, gave the jury the false impression that his relationship with petitioner's wife was nothing more than that of casual friendship. This testimony was elicited by the prosecutor who knew of the illicit intercourse between Castilleja and petitioner's wife. Undoubtedly Castilleja's testimony was seriously prejudicial to petitioner. It tended squarely to refute his claim that he had adequate cause for a surge of 'sudden passion' in which he killed his wife. If Castilleja's relationship with petitioner's wife had been truthfully portrayed to the jury, it would have, apart from impeaching his credibility, tended to corroborate petitioner's contention that he had found his wife embracing Castilleja. If petitioner's defense had been accepted by the jury, as it might well have been if Castilleja had not been allowed to testify falsely, to the knowledge of the prosecutor, his offense would have been reduced to 'murder without malice' precluding the death penalty now imposed upon him."

Two cases in which the mere suppression of evidence by the prosecutor has served as a basis for a holding that a denial of due process occurred are United States v. Dye, 3 Cir., 221 F.2d 763, and United States v. Rutkin, 3 Cir., 212 F. 2d 641. In the Dye case the prosecution failed to put on the witness stand, although subpoenaed to the trial, a police officer who had made a report during the investigation to the effect that the accused, later convicted of first degree murder, had smelled of liquor, and that he was under the influence of liquor to a quarrelsome degree; that his shirt and clothes were torn; and that he was perspiring and "mussed up." A police officer who arrested the accused testified that he was sober and that he did not appear to have been drunk. The defense had no knowledge of the report made by the arresting officer which was favorable to the defense. At the close of the session at which another officer testified, the prosecutor stated in open court:

"At this time I can call a few other police officers who would corroborate what has already been testified to. I see no reason why we should merely prolong the testimony now when the witnesses are not here."

While it is true that there were other witnesses who would have corroborated the officer who had testified, it is also true that the one policeman, if called, would have testified favorably to the defense. The Court thereupon held that the evidence by the witness favorable to the defense "was substantial evidence which should have been, but never was, submitted to the jury (the only tribunal entitled to pass upon it) in connection with what the Court did charge as to the effect of the drunkenness of Thompson * * *" We find ourselves fully in accord with the statement by Judge Hastie in the concurring opinion in the Dye case: "It seems likely that many situations will arise in which a prosecutor can fairly keep to himself his knowledge of available testimony which he views as mistaken or false. But there are other circumstances in which a prosecutor must, or certainly should know that even testimony which he honestly disbelieves is of a type or from a source which in all probability would make it very persuasive to a fair minded jury. This is notably true of testimony of a police officer, and most certainly of an arresting officer, favorable to a contention of the accused person."

In the case before us the State contends that at most the testimony that would be available from the psychiatrist Crowe and the psychologist Tracktir would be in the nature of opinion evidence, and that no court has thus far held that the failure of the prosecution to disclose an opinion, even though favorable to the defense, works a deprivation of constitutional rights. The vice of this argument is that it is not the nature or the weight to be accorded to an opinion, but the *fact* that such an opinion had been formed by such an obviously objective witness as one engaged by the prosecution to make the examination. In this respect it falls very much within the concept of the Dye case, where it was a police officer whose testimony, if elicited, would have been helpful to the defendant.

We have no doubt that the prosecuting officer, during the trial of these two appellants, conscientiously believed them both to be legally competent. However, it is stretching our credulity to the utmost to ask us to believe that when he received word from Dr. Crowe that he and Dr. Tracktir both considered both appellants legally incompetent, he was not aware of the great, and possibly decisive, significance of such a fact if known to the accused.

The Court does not need to refer to the statement by way of an affidavit subsequently made by Mr. Knight, trial counsel for the appellants, to appreciate the materiality of this undisclosed fact. This affidavit is to the effect that when he learned that Dr. Sher, County Psychiatrist of Harris County, had informed Dr. Burch that Sher expressed the opinion the defendants were mentally competent to stand trial, "this led me to the conclusion that no other psychiatrist of any kind had examined the defendants or either of them, at the request of the District Attorney's office, and had I been informed Dr. Crowe and Dr. Tracktir

had made a finding that Leslie Douglas Ashley was of unsound mind and legally insane, as contemplated by the criminal laws of the State of Texas, then, of course, I would have enlisted further psychiatric assistance in the case and sought to have had the testimony of Dr. Crowe and Dr. Tracktir adduced before a jury on a defense of insanity as to said Leslie Douglas Ashley[2] prior to the main trial, or as issues in the main trial, and in either event would have in all likelihood plead insanity as of the time of the commission of the offense and as of the time of the insanity hearing and the main trial, and would not have introduced Leslie Douglas Ashley as a witness in his own behalf in a joint trial of the two defendants."

We conclude that without any such expression from the trial counsel that the fact of the opinions of Drs. Crowe and Tracktir, favorable to the defendants, is of such vital significance to the accused persons in planning and conducting their defense, the failure of the District Attorney to inform their counsel of this fact amounts to such fundamental unfairness in the trial of a criminal case as to amount to a denial of due process.

The judgment of the trial court in denying the application for writ of habeas corpus is, therefore, reversed and the case is remanded to the trial court with directions to issue the writ, and discharge the prisoners, without, of course, in any way precluding a new trial by the State of Texas.

The stay of execution heretofore entered by Judge Brown is continued until a final disposition of the matter in the Southern District of Texas.

Reversed and remanded.

DeVANE, District Judge (dissenting).

I am unable to concur in the able opinion of Chief Judge TUTTLE in this case.

---

2. It is to be noted that while Knight mentioned Ashley only, this is clearly due to the fact that it was given in connection with proceedings brought by Ashley alone and any reference to Lima would have been irrelevant.

These appellants were represented by Jack Knight, a very able criminal trial lawyer of Texas. The record in the case discloses that the District Attorney of Harris County, Texas, following his usual policy on the occasion of the commission of a serious crime, called on the regularly employed county psychiatrist Dr. Sher to examine the appellants and in addition in this case he engaged Dr. Howard Crowe, a practicing psychiatrist, to examine the appellants and Dr. Crowe engaged Dr. Jack Tracktir, a psychologist, to assist him in his examination of the appellants.

Of course, these appellants could not have been examined by these physicians without the knowledge of Jack Knight, their counsel, and this in my opinion was what led Mr. Knight to engage a criminal psychiatrist, Dr. Burch, to examine them prior to trial. Dr. Burch expressed his opinion to Jack Knight in the language set out in the main opinion in which he concluded that appellants were at the time examined by him and at the time of the commission of the alleged crime aware of the nature and extent of their acts.

Faced with his own doctor's report, Mr. Knight saw fit to try this case without asserting the mental incapacity of the appellants, claiming only the defense of self-defense and defense of each other, claiming that the deceased had become violent in his treatment of Carolyn Lima and a struggle ensued, which resulted in his being shot and killed by one or the other of the appellants.

I am unwilling to substitute my judgment for that of Mr. Knight at the time he tried these cases and I am unwilling to assume on this record that Mr. Knight was unaware of the examination of these appellants by Doctors Sher, Crowe and Tracktir before appellants were placed on trial.

This is not a case where the District Attorney was guilty of any misconduct by refusing to make known to Mr. Knight information he had with reference to the sanity of these appellants and based on this record I am confident that had Mr. Knight sought from the District Attorney information as to the reports of Doctors Sher, Crowe and Tracktir, he would have been advised fully with reference to them. This case before us was brought by other counsel and not by Mr. Knight.

For these reasons I dissent in this case.

Rehearing denied; DE VANE, J., dissenting