337 A.2d 564

**COMMONWEALTH of Pennsylvania**

v.

**Eddie WILDER, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Sept. 30, 1974.

Decided May 13, 1975.

598

John J. Dean, Stephen P. Swem, Pittsburgh, for appellant.

Robert L. Eberhardt, Asst. Dist. Atty., John J. Hickton, Dist. Atty., John M. Tighe, First Asst. Dist. Atty.,

Dennis Kissane, Asst. Dist. Atty., Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

JONES, Chief Justice.

Harry DeWolf, a black, twenty-three year old employed college student, was shot twice in the abdomen on October 2, 1971, while he was attempting to enter his car in a parking lot in Pittsburgh. Two young boys had observed a black Chevrolet in the same parking lot a few minutes before the shooting. They and another man heard shots, then saw the car speed from the parking lot driving the wrong way on a one-way street. Less than fifteen minutes later, Eddie Wilder and Richard Staples were arrested. The victim's briefcase and the murder weapon were discovered in the Staples' car. Appellant and Staples were both charged with armed robbery, assault with intent to kill and violation of the Uniform Firearms Act. Wilder did not post bail and was incarcerated. The victim died twenty-four days later on October 26, 1971. In separate jury trials, Wilder was convicted of murder in the first degree and Staples of murder in the second degree. (Staples' conviction was affirmed per curiam at 457 Pa. 468, 326 A.2d 317 (1974).) Counsel for appellant filed a post-trial motions, which were denied. Counsel failed to take a timely appeal; petition for leave to appeal nunc pro tunc was denied. Eddie Wilder then filed a petition under the Post Conviction Hearing Act,[1] alleging, *inter alia,* the unconstitutional suppression of evidence by the Commonwealth and the lack of probable cause in the arrest and search and seizure. Wilder was granted the right to file

1. Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. § 1180–1 et seq.

post-trial motions nunc pro tunc, limited to the probable cause issue, which were denied; that issue is here on direct appeal. The confrontation issue raised by appellant in his PCHA petition was appealed separately.[2] We shall consider the appeals together.

■■ The Fourth Amendment permits a warrantless arrest under exigent circumstances if based upon probable cause. The crucial test is whether there were facts available which would justify a person of reasonable caution in the belief that a crime had been committed and that the individual arrested was the probable perpetrator. *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1966); *Ker v. California*, 374 U.S. 23, 83 S. Ct. 1623, 10 L.Ed.2d 726 (1963). Mere suspicion is not enough; the burden is on the Commonwealth to show with reasonable specificity facts sufficient to establish that probable cause existed. *Commonwealth v. Jones*, 457 Pa. 423, 427–428, 322 A.2d 119, 122–123 (1974).[3]

■■ There is no question that a crime had been committed. The only question is whether there was sufficient information at the time of the arrest to reasonably justify a belief by police that the Staples car was involved in the crime and that Wilder was involved as well. We find that there was. The arresting officers received a radio report of a full-size 1965 black Chevrolet, possi-

2. Discussion of the appellant's complaint in this regard is long overdue. Although raised pro se on numerous occasions by appellant, the issue was not argued until this appeal. The issue also could have been brought to the Court through post-trial motions nunc pro tunc. That would have permitted in the first instance the evidentiary hearing for which we here remand.

3. The Commonwealth argues that if no probable cause existed, this was a permissible *stop* under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Since the conduct of the officers clearly indicates that they intended to and did go beyond the narrowly circumscribed intrusion in *Terry* and since we find that probable cause existed for the search and seizure, we need not discuss whether the search was justified under *Terry* and its progeny. *See Jones*, 457 Pa. at 427 n. 5, 322 A.2d at 122 n. 5.

bly with a loud muffler, occupied by two black males. The car sped from the scene going the wrong way on the one-way street. Although Staples' car was traveling at a normal speed and observing traffic signals when the officers stopped it, the car matched the full description broadcast over the radio. Furthermore, the arrest took place within fifteen blocks and less than fifteen minutes from the shooting. And, although the fact of appellant's mere presence in the car at that time might not be sufficient to establish probable cause for his arrest, a combination of factors provided probable cause for appellant's arrest. Probable cause for Wilder's arrest depended upon an inference raised by his presence in the Staples car after the crime had occurred.[4] All circumstances surrounding the apprehension can be taken into account in determining probable cause. *Commonwealth v. Lawson*, 454 Pa. 23, 309 A.2d 391 (1973). Moments before the officers stopped the Staples car, they heard over the radio a report by another officer that the suspected car had sped past him at the Bloomfield Bridge near to where the arresting officers first observed the car. The physical description of the car with occupants and the circumstances surrounding the ultimate apprehension gave police sufficient reason to believe that this was the car which had been at the scene. Wilder's presence in the car so shortly after the shooting led to the reasonable inference by police that he was the same person seen in the car fleeing the crime and a probable participant in the shooting. Both Wilder's arrest and the seizure of the briefcase and murder weapon were based upon probable cause. *Cf. Chambers v. Maroney*, 399 U.S. 42, 46–47, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

Appellant argues in his PCHA appeal the unconstitutional suppression of evidence by the Commonwealth in

---

4. Appellant testified that Staples gave him a ride home from Oakland at about 9:30 p.m. and he denied being in the car when it was earlier in the vicinity of the shooting.

its refusal to allow him to confront the victim. The issue which appellant raises was given constitutional dimension in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). That decision was the culmination of a developing line of cases recognizing the profound effect that the suppression of evidence produced upon a defendant's right to a fair trial.[5] *Brady* affirmed that "suppression by the prosecution of evidence favorable to an accused *upon request* violates due process [of law] where the evidence is material either to guilt or to punishment." *Id.* at 87, 83 S.Ct. at 1196. (Emphasis added). Two years later we recognized that under some circumstances state [6] refusal to obtain disclosure of vital information may amount to a trial lacking in due process. *Commonwealth v. Smith,* 417 Pa. 321, 208 A.2d 219 (1965).[7]

---

5. *See* 74 Yale Law Journal 136 (1964), The Prosecutor's Constitutional Duty to Reveal Evidence to the Defendant. *See also Brady v. Maryland, supra; Pyle v. Kansas,* 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942); *Barbee v. Warden,* 331 F.2d 842 (4th Cir. 1964); *United States ex rel. Meers v. Wilkins,* 326 F.2d 135, 139–40 (2d Cir. 1964); *Ashley v. Texas,* 319 F.2d 80 (5th Cir. 1963); *United States ex rel. Butler v. Maroney,* 319 F.2d 622 (3d Cir. 1963); *Kyle v. United States,* 297 F.2d 507 (2d Cir. 1961); *Curran v. Delaware,* 259 F.2d 707, 711 (3d Cir. 1958); *United States ex rel. Thompson v. Dye,* 221 F.2d 763 (3d Cir. 1955); *United States ex rel. Almeida v. Baldi,* 195 F.2d 815 (3d Cir. 1952); *Application of Kapatos,* 208 F.Supp. 883 (S.D.N.Y.1962); *Smallwood v. Warden,* 205 F.Supp. 325 (D.Md.1962); *Griffin v. United States,* 87 U.S. App.D.C. 172, 183 F.2d 990 (1950); *United States ex rel. Montgomery v. Ragen,* 86 F.Supp. 382 (N.D.Ill.1949).

6. It makes no difference that the withholding of evidence was by officials other than the prosecutor. "The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney, were guilty of the nondisclosure." *Barbee v. Warden, Maryland Penitentiary,* 331 F.2d 842, 846 (4th Cir. 1964). *Cf. Commonwealth v. Pierce,* 451 Pa. 190, 303 A.2d 209 (1973).

7. "The principle of *Mooney v. Holohan* [294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935)] is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly.

While the *Brady* and *Smith* courts were necessarily concerned with the disclosure of documentary evidence, the same principles were applied to the defendant's right of access to a witness in *Lewis v. Lebanon Court of Common Pleas*, 436 Pa. 296, 260 A.2d 184 (1969). Consistent in the belief that the primary duty of a district attorney is not to convict but to see that justice is done *Lewis* held that, in the absence of an affirmative and convincing showing of exceptional circumstances or compelling reasons, the district attorney must not interfere with the right of a defendant to interview an otherwise willing witness. The issue is not the form which the interference takes but whether it is effective. *Id.* at 302–03, 260 A.2d at 188.

■ Wilder contended at trial that he was not in the Staples car until it was out of the vicinity where the shooting occurred. The sum of the Commonwealth's case was the evidence seized from the Staples car and appellant's presence therein shortly after the shooting. It is uncontradicted that while appellant was held in custody and while the victim was in the hospital, appellant made prompt and repeated requests for confrontation, all of which were denied. Identification requested by Wilder upon his arrest was crucial to his defense.[8] Shot twice in the abdomen, the victim had been attacked in a face-to-face confrontation. The victim, a black, twenty-three

. . . A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial which bears heavily on the defendant."
*Brady*, 373 U.S. at 88, 83 S.Ct. at 1197.

8. The suppression of identification evidence suggested to the jury that such was unimportant or unavailable. While any identification evidence to be elicited might not have been absolute proof of Wilder's innocence, if available for the jury to consider, it "might well have nurtured, even generated, a reasonable doubt as to guilt. One cannot possibly say with confidence that such a defect in the trial was harmless." *Barbee*, 331 F.2d at 847.

year old college student, did identify his assailants as "two black kids," as the preliminary hearing record reveals. Since there were no independent eyewitnesses, the victim was the only person who could shed any light upon the identity of the assailants. No reason is found in the record for precluding confrontation with the victim.[9]

As we said in *Smith*, 417 Pa. at 333, 208 A.2d at 219, it would seem that "[e]very possible sliver of light which [could] be shed on this question should be welcome, if not indeed invited and demanded." It is inexplicable on this record why appellant's request for confrontation was not granted, and any inference to be drawn therefrom is to be adverse to the prosecution, not to appellant. The victim was twenty-three years old. His first words after being shot were to the effect that he had been attacked by "two black kids." Staples, the driver, was twenty-three at the time; Wilder, the appellant, was thirty-nine, almost forty. Thus, identification evidence sought by appellant had at least the potential for exculpation. The police refusal to take appellant upon request to the victim effectively precluded confrontation. Suppression of the material evidence of identification was becoming irreversible and complete since the victim was dying. Identification had to be prompt or not at all. We note that the urgency of the situation has already been acknowledged by a higher court.

"Here was the only person in the world who could possibly exonerate Stovall. Her words, and only her words, 'He is not the man' could have resulted in freedom for Stovall. The hospital was not far distant from the courthouse and jail. No one knew how long Mrs. Behrendt might live. Faced with the responsibility of identifying the attacker, with the need for im-

---

9. The record does show that the doctors considered the victim well enough to talk with police and to give them a statement. That statement has never been made a part of the record. The victim may have also been interviewed by news reporters.

mediate action, and with the knowledge that Mrs. Behrendt could not visit the jail, the police followed the only feasible procedure and took Stovall to the hospital room."

*Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).

Under the circumstances of this case as presented in the record before us, appellant was entitled upon request to a confrontation with the victim. The authorities have the right to withhold confrontation upon request only under circumstances where the victim's condition is such as to make meaningless the procedure. Absent a clear showing that the victim was mentally or physically unable to cooperate, confrontation under these facts was mandated. The record before us lacks evidence of the victim's condition at the time of Wilder's request.

Accordingly, the order dismissing appellant's PCHA petition for exculpatory evidence is vacated and the record remanded to the trial court for an evidentiary hearing in accordance with the Act of January 25, 1966, P.L. (1965) 1580, § 9, 19 P.S. § 1180-9, to determine whether the victim's condition comprised exceptional and compelling reasons which could justify the authorities' failure to afford appellant confrontation.

O'BRIEN and NIX, JJ., concur in the result.

ROBERTS, J., filed a concurring and dissenting opinion in which MANDERINO, J., joins.

ROBERTS, Justice (concurring and dissenting).

I join in that portion of the opinion of the Court which requires that appellant be granted post-conviction relief unless the Commonwealth produces affirmative and convincing evidence of exceptional circumstances or compelling reasons justifying its denial of appellant's request to confront Harry DeWolf.

However, if the Commonwealth fails to produce that evidence, the appropriate relief is discharge; because DeWolf is now dead and a show-up thus impossible, appellant could never receive a fair trial. Therefore, I would remand for a hearing without deciding the probable cause issue, and, if relief should not be granted, permit an appeal in due course in which the question of probable cause could then be considered.

MANDERINO, J., joins in this opinion.