434 A.2d 157

**COMMONWEALTH of Pennsylvania**

**v.**

**Antonio URBINA, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1980.

Filed Aug. 21, 1981.

118

Thomas B. Schmidt, III, Harrisburg, for appellant.

Michael H. Ranck, District Attorney, submitted a brief on behalf of Commonwealth, appellee.

Before SPAETH, BROSKY and HOFFMAN, JJ.

SPAETH, Judge:

 This is an appeal from a judgment of sentence for unlawful restraint [1] and robbery.[2] The principal issue, as we see it, is whether appellant was arrested without probable cause. We have concluded that there was probable cause, and affirm.[3]

1. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, Section 1, 18 PA.C.S.A. § 2902.

2. 18 Pa.C.S.A. § 3701.

3. Appellant also argues that evidence was improperly taken from his automobile; that testimony about a photographic line-up was admitted to his prejudice; and that the trial judge should have declared a mistrial because a juror reported late. These arguments are properly disposed of by the opinion of the lower court (ECKMAN, J.). Finally, appellant argues that the verdicts were contrary to the weight of the evidence. It appears to us that this argument has been waived. Although raised in appellant's post-trial motion, so far as we can tell it was not pressed on argument before the lower court. *See* slip op. at 2, where the court enumerates appellant's arguments. To be preserved for appellate review, an issue must not only be raised by post-trial motion, but also, not abandoned when the case is argued to

Appellant was arrested for committing an armed robbery at the Weis market in East Hempfield Township, Lancaster County. Officer Robert A. Herman, Jr., the East Hempfield Township police officer who arrested appellant, relied on two sources of information: a radio broadcast from the Lancaster County Radio Dispatcher, and Kearney Sherr, the owner of a service station approximately one block from the Weis market. At 7:37 A.M. on October 28, 1978, while at the township police station, Officer Herman heard over the police radio a report that there had been an armed robbery at the Weis market. The officer responded to the call by driving to the shopping plaza where the Weis market was located. En route he received information on the police radio describing the robber as a black or Puerto Rican male with a handgun [4] who was last seen running from the market to the northeast corner of the parking lot in the shopping plaza. The officer drove to this corner and conducted an on-foot search of the area. Finding nothing, he returned to his police car, where he heard over the radio that an individual from a service station near the Weis market was traveling east on Columbia Avenue in pursuit of a small white foreign automobile with out-of-state license tags. Proceeding east on Columbia Avenue, the officer encountered traffic caused by an unrelated automobile accident.

the lower court. *See generally Carnicelli v. Bartram,* 289 Pa.Super. 424, 433 A.2d 878 (1981) (discussing cases). *See also Commonwealth v. Waters,* 477 Pa. 430, 434, 384 A.2d 234, 236 (1978) ("boilerplate" motions disapproved; "counsel's precise statement of issues and grounds relied upon in written form insures that both the trial court and the Commonwealth will have adequate notice of the legal theories being advanced"); *Commonwealth v. Perry,* 279 Pa.Super. 32, 420 A.2d 729 (1980) (issue raised in post-verdict motion but not briefed; held, waived); Pa.R.Crim.P. 1123(a) ("only those issues raised and the grounds relied upon in the [post-verdict] motions may be argued"). In any event, the argument is without merit. One witness identified appellant as the robber. (N.T. 18–19) The robber was wearing a wig. (N.T. 47) Microscopic analysis showed that fibers found in a hairbrush taken from appellant's automobile were of the same material, color, and diameter as fibers from the wig. (N.T. 95).

4. Appellant is described in the Commonwealth's brief as being a Cuban male.

At the scene of this accident he was approached by Kearney Sherr, who was the service station owner who had been in pursuit of the white automobile. Sherr told Officer Herman that about 7:45 a. m. he heard a report of the robbery on his police radio scanner; that he went to watch the traffic coming from the parking lot at the Weis market, and saw a white automobile, going at a "fairly good rate of speed," leave a trailer court one half block from his station, between the station and the Weis market; and that he had followed the white automobile to a parking lot in the Conestoga West Apartments in neighboring Manor Township. The officer asked Sherr to take him to the parking lot. When they arrived, Sherr identified an automobile there as the one he had followed. Appellant was at the driver's side, and the officer arrested him; the time of the arrest was approximately 7:51 a. m.

The law is clear that a warrantless arrest is not lawful unless there is probable cause therefor ... Whether there is probable cause to arrest without a warrant depends on whether, at the moment a suspect is taken into custody, the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that an offense has been committed and that the person to be arrested has committed the offense...

Thus, in order to arrest without a warrant, the officer must have a reasonable belief in the probability of criminal activity by the person to be arrested. However, that belief need not be grounded in the officer's direct, personal knowledge of the relevant facts and circumstances. It may, instead, rest solely on information supplied by another person where there is a "substantial basis" for crediting that information ...

*Commonwealth v. Stokes*, 480 Pa. 38, 43–44, 389 A.2d 74, 76 (1978) (citations omitted).

*See also Commonwealth v. Patterson*, 266 Pa.Super. 167, 403 A.2d 596 (1979).

Here, there is no question that Officer Herman had a reasonable belief that a crime had been committed. The question, rather, is whether the officer had sufficient information to support a reasonable belief that appellant had committed the crime.

In arguing that the information was not sufficient, appellant particularly relies on *Commonwealth v. Daniels*, 455 Pa. 552, 317 A.2d 237 (1974), *Commonwealth v. Ryan*, 253 Pa.Super. 92, 384 A.2d 1243 (1978), and *Commonwealth v. Everett*, 234 Pa.Super. 249, 338 A.2d 662 (1975). Certainly these cases are in point; we think, however, that they are distinguishable.

In *Daniels* the officer had two sources of information; one source "only observed two men acting 'suspiciously', and had no idea of the identities of the people he observed," 455 Pa. at 557, 317 A.2d at 239, the other, who named the defendant, was an anonymous caller who gave no indication of how he had obtained his information. In *Ryan* the officer had received radio information that a robbery had been committed by two men, one of whom was described as a Negro male, dark, about 5'8", and wearing a black coat, and that the men had fled in a Cadillac, which had been wrecked, and were being pursued on foot. The officer "proceeded to the scene of the chase, and near the area observed a Negro male . . . who appeared to fit" the radio description and was "walking quickly." 253 Pa.Super. at 98, 99, 384 A.2d at 1246, 1247. In *Everett* the officers had received radio information that a robbery had been committed by two black males, one of whom was wearing a white T-shirt, who were believed to have escaped by automobile. Less than ten minutes later the officers saw two black males a short distance from the scene of the robbery; one was wearing a T-shirt; also, one was pounding the door of a house and the other was lounging half in and half out of a car with out-of-state plates. As the officers approached, the two men walked towards them. When within twelve to fifteen feet of them, the officers heard someone from inside the house yell that the men did not belong there. In all of these cases it was held that the arrest was without probable cause.

The feature that distinguishes these cases from the present case is that in none of them was the arresting officer accompanied by an informant who had seen the suspect flee from the scene of the crime. In *Daniels* the Supreme Court specifically noted this weakness, commenting that "neither source can be said to be an eyewitness." 455 Pa. at 557, 317 A.2d at 239.

The lower court relied on *Commonwealth v. Wilder*, 461 Pa. 597, 337 A.2d 564 (1975), and *Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974). In *Wilder* the arrest was for a shooting on a parking lot. A few minutes before the shooting, two boys had seen a black chevrolet on the lot; they heard shots and saw the chevrolet speed from the lot, going the wrong way on a one-way street. The arresting officers received a radio report describing "a full-size black Chevrolet, possibly with a loud muffler, occupied by two black males." 461 Pa. at 600–01, 337 A.2d at 566. The officers saw such an automobile, within fifteen blocks of the scene of the shooting, and less than fifteen minutes later, and stopped it and arrested the driver and passenger. Moments before the officers stopped the automobile, they heard a radio report by another officer that the suspected automobile had sped past him at the Bloomfield Bridge, which was near where the officers first saw the automobile. When they stopped it, it was traveling at a normal rate of speed and the driver was observing traffic signals. In *Jones* the arrest was for a shooting during the robbery of a grocery store at 5416 Westminister Avenue in Philadelphia. A neighbor saw two boys outside the store, and three others who joined them, fleeing from the store. He chased them in his automobile south on 54th Street to Ogden Street and east on Ogden to 52nd Street, where three of the boys caught a bus and two fled down an alley. At that point Officer Green took up the chase until he lost track of one of the boys at 50th and Brown Streets. Meanwhile, Officer Abrams had received radio information that a robbery had been committed at 54th and Westminister Avenue by "four or five Negro males between the ages of 17 and 21 in dark

clothing," 457 Pa. at 426, 322 A.2d at 122, and that the robbers had fled eastward. When Officer Abrams saw a man who fit this description walking very fast in the 4900 block of Parrish Street, about two blocks from 50th & Brown Streets breathing heavily, perspiring, and frequently looking over his shoulder, he stopped and arrested him. In both *Wilder* and *Jones* the Supreme Court found probable cause for the arrest.

We recognize that *Jones* may be distinguished from the present case; appellant did not present the suspicious appearance presented by the suspect in *Jones*. We find it difficult, however, to distinguish *Wilder*; if anything, the facts here seem stronger than they were in *Wilder*, for in *Wilder* the police did not have an informant who never lost sight of the fleeing car.

In *Commonwealth v. Pegram*, 450 Pa. 590, 593, 301 A.2d 695, 697 (1973), the Supreme Court held that "flight standing alone" is not sufficient to support a finding of probable cause. The Court went on to quote with approval the following statement from *United States v. Margeson*, 259 F.Supp. 256, 265 (E.D.Pa.1966):

Flight, coupled with other factors, such as knowledge of the defendant's prior criminal record or the sight of contraband or screams for help or reliable information that defendant had attempted to commit or had committed a crime, may be strong indication that there is something that those fleeing wish to hide from the police and may constitute probable cause for arrest . . . .

It is probably impossible to reconcile the cases as to when there are enough "other factors," in addition to flight, to constitute probably cause. For example, *Commonwealth v. Ryan, supra*, and *Commonwealth v. Everett, supra*, seem to require a stronger showing of probable cause than does *Commonwealth v. Wilder, supra*, although in this regard we note that in *Ryan* and *Everett* the decision on probable cause was not central to disposition. In *Ryan* the in-court identification was found to be not tainted by the arrest, and in *Everett*, after the arrest the officers received additional

untainted information that corroborated their belief that the defendant's automobile was the escape vehicle, and provided probable cause.

Such differences among the cases, however, should not surprise us. The facts and circumstances of every case differ; it is impossible to classify them and thereby derive a formula that will enable us to say that in one case probable cause has been shown, in another, not. In one case a particular fact may be of great significance to the arresting officer, in another it may not help him at all in surmising what is happening. Besides, even if the facts of any two cases were just the same, different judges might still reasonably disagree about how the officer as "a man of reasonable caution" should have reacted.

■ Here, Officer Herman knew that Kearney Sherr had seen an automobile, not from the neighborhood, leave the immediate area of the robbery right after the robbery was committed, at a rate of speed fast enough to attract attention. (We acknowledge that Sherr did not see appellant commit the robbery. However, in *Commonwealth v. Jones, supra,* neither did the neighbor who chased the boys see them rob the grocer.) Also, the officer knew that Sherr had been sufficiently impressed by what he saw to pursue the automobile. (Of course, simply because Sherr was impressed did not mean he was right. Nevertheless, we think an officer is entitled to give some weight to the fact that a citizen is so convinced he gives chase, especially when the citizen operates a service station across from the scene of the robbery and may therefore be assumed to be familiar with comings and goings in the area.) Also, Sherr took the officer to the place to which he had pursued the automobile, and there beside the automobile was a man who fit the description of the robber broadcast over the police radio. (Admittedly, it was only a very general description. Still, it fit.) Finally, only a few minutes had elapsed between the time of the robbery and the time Sherr took the officer to appellant's automobile. While it may be said that the offi-

cer did not have many facts, we believe that in the circumstances he had enough.

Affirmed.