**Commonwealth v. Klinger**

C.P. of Monroe County, no. 109 CR 1972.

*Bradley A. Schmidt,* for Commonwealth.
*Jason M. Leon,* for defendant.

CHESLOCK, *S.J.*, December 10, 2010—This matter comes before the court on defendant Richard Calvin Klinger's petition for post conviction relief ("PCRA petition"). In October 1971, the commonwealth charged defendant with the murder of Regina Prosser. Defendant was certified as an adult in this court, pled guilty to a general murder charge, and requested a degree of guilt hearing before a three judge panel. On February 9, 1972, Judges Williams, Davis, and Little found defendant guilty of first degree murder and sentenced him to a term of life imprisonment. At the time of sentencing, defendant was seventeen years old.

The court denied defendant's motion for reconsideration of verdict on July 3, 1973. The Supreme Court of Pennsylvania affirmed this court's judgment of sentence by opinion dated May 13, 1975. *Commonwealth v. Klinger,* 461 Pa. 606, 337 A.2d 569 (1975). Defendant filed multiple Post-Conviction Hearing Act petitions ("PCHA petition") which Judge Williams ultimately dismissed on September 7, 1982. Judge Williams refused to find defendant's trial counsel ineffective and concluded that the court did not err when it refused to suppress inculpatory statements made by defendant. The Superior Court of Pennsylvania affirmed denial of defendant's PCHA petition on May 11, 1984.

Defendant filed a pro se PCRA petition on June 28, 2010 and this court appointed Jason M. Leon, Esquire counsel for defendant. Defendant and his counsel contend

that defendant is eligible for relief based on the United States Supreme Court's recent holding in *Graham v. Florida*, 130 S. Ct. 2011 (2010). Defendant cites the court's holding in *Graham* — that sentences of life imprisonment without the possibility of parole for juvenile, non-homicide offenders violate the eighth amendment's prohibition of cruel and unusual punishment — and argues that his sentence violates the United States and Pennsylvania Constitutions. Therefore, defendant claims, he is currently serving an illegal and unconstitutional sentence and is entitled to relief under the PCRA statute. The court held a hearing on November 18, 2010, and we are ready to decide this matter.

Pennsylvania's Post-Conviction Relief Act, section 9543, provides in relevant part:

(a) General rule. - To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:

(1) That the petitioner has been convicted of a crime under the laws of this commonwealth and is at the time relief is granted:

(i) currently serving a sentence of imprisonment, probation or parole for the crime;

(2) That the conviction or sentence resulted from one or more of the following:

(i) A violation of the constitution of this commonwealth or the constitution or laws of the United States which, in the circumstances

of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

...

(vii) The imposition of a sentence greater than the lawful maximum.

...

(3) That the allegation of error has not been previously litigated or waived.

(4) That the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel. 42 Pa. C.S. § 9543(a). See also *Commonwealth v. Steele,* 599 Pa. 341, 961 A.2d 786 (2008).

Mr. Klinger is currently incarcerated at SCI-Dallas for a term of life imprisonment, and he bases the instant PCRA petition on the Supreme Court's recent decision in *Graham v. Florida.* He therefore satisfies elements (1), (3), and (4) of Section 9543(a). We must only decide, then, whether the Supreme Court's recent pronouncement in *Graham* renders Mr. Klinger's sentence greater than the lawful maximum and/or unconstitutional under the Pennsylvania or United States Constitutions.

In Pennsylvania, "[a] person who has been convicted of a murder of the first degree...shall be sentenced to death or to a term of life imprisonment...." 18 Pa. C.S. § 1102(a)(1). Under this statute, a court may not impose a lesser

sentence than death or life imprisonment for first degree murderers. *Id.* Additionally, "the statute unequivocally bars all parole for first degree murderers whether the sentence is life or death." *Commonwealth v. Yount*, 615 A.2d 1316 (Pa. Super. 1992). A trial court considering a PCRA petition has no authority to modify a sentence where the sentence, as it stands, is not illegal. *Commonwealth v. Payne*, 797 A.2d 1000 (Pa. Super. 2002).

Based on Section 1102(a)(1) and corresponding Pennsylvania case law, we hold that Mr. Klinger is not presently serving an illegal sentence greater than the lawful maximum. On the contrary, the trial court sentenced Mr. Klinger to a term of life imprisonment in line with governing statutory authority, and we may not reconsider his sentence on this basis.

Section 9543(a)(2)(i) provides for relief under the PCRA statute if the petitioner can prove constitutional violations which undermined the fact-finding process to such an extent that no reliable adjudication of guilt or innocence could have taken place. See 42 Pa. C.S. § 9543(a)(2)(i). Courts in Pennsylvania have granted PCRA petitions in various cases which suggest possible constitutional infirmities. See *Commonwealth v. Smith*, 717 A.2d 1032 (Pa. Super. 1998) (reversing trial court's denial of defendant's PCRA request, without a hearing, when defendant was denied right to counsel when pleading guilty and when guilty plea colloquy was "marginal at best"); *Commonwealth v. Galloway*, 640 A.2d 454 (Pa. Super. 1994) (granting defendant new trial because commonwealth failed to disclose its key witness' recollection had been hypnotically refreshed prior to

trial); *Commonwealth v. Wilder*, 461 Pa. 597, 337 A.2d 564 (1975) (vacating order dismissing defendant's PCHA petition when police refused to take defendant to the victim upon request, effectively precluding defendant his right to confront adverse witnesses, when victim died days after request for confrontation).

In the instant PCRA petition, defendant contends that his sentence of life without the possibility of parole is unconstitutional in light of the Supreme Court's recent pronouncement that such life sentences, as applied to individuals sentenced as minors for non-homicide crimes, violate the Eighth Amendment's protection against cruel and unusual punishment, applied to the states through the Fourteenth Amendment.

As stated above, individuals sentenced to first degree murder in Pennsylvania shall be sentenced to death or life imprisonment. 18 Pa. C.S. § 1102(a)(1). Pennsylvania courts have consistently read "life imprisonment" in the statute to mean life imprisonment without the possibility of parole. See *Commonwealth v. Trivigno*, 561 Pa. 232, 750 A.2d 243 (2000); *Commonwealth v. Robinson*, 554 Pa. 293, 721 A.2d 344 (1998); *Commonwealth v. Marrero,* 546 Pa. 596, 687 A.2d 1102 (1996). In *Commonwealth v. Button*, 481 A.2d 342 (Pa. Super. 1984), Judge Tamilia explained the relationship between life sentences and the possibility of parole in Pennsylvania:

[A] life sentence is precisely that, for life....Life sentences, whether imposed singly or in multiples, have no minimum....Once sentence is pronounced, the length of the sentence effectively passes from the ambit

of judicial consideration of the executive department, regardless of the wording of the sentence order. Parole, or more properly commutation, is neither a right of the prisoner nor a prerogative of the court, but is a matter within the administrative purview of the Board of Parole. *Button*, 481 A.2d at 346. (internal citations omitted)

Article IV, Section 9 of the Pennsylvania Constitution provides that the Board of Pardons hears prisoners' applications for commutation of sentence; if the board recommends commutation, the application is sent to the governor for a final determination. See also 71 P.S. § 299. Pennsylvania's parole system provides an incentive to prisoners to reform themselves to earn their freedom in society. *Hennessey v. Pennsylvania Bd. of Pardons*, 655 A.2d 218 (Pa. Cmwlth. 1995).

In *Graham v. Florida*, 130 S. Ct. 2011 (2010), decided May 17, 2010, the United States Supreme Court held that the Eighth Amendment categorically prohibits life sentences without the possibility of parole for juveniles convicted of non-homicide offenses. The court noted that juvenile offenders differ from adults in many critical respects. *Id.* at 2026-27.

Compared to adults, juveniles exhibit a "lack of maturity and an underdeveloped sense of responsibility" and "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." *Id.* at 2026. Additionally, juveniles' characters are "not as well formed" as adults'. *Id.* In light of the tremendous psychological growth that takes place between

adolescence and adulthood, the court wrote: "[a] juvenile is not absolved of responsibility for his actions, but his transgression 'is not as morally reprehensible as that of an adult.'" *Id.* (internal citations omitted)

The court considered the various purposes of incarceration and asserted that life sentences without the possibility of parole for juvenile, non-homicide offenders do not serve any legitimate penological goals, including retribution, rehabilitation, incapacitation, and deterrence. *Id.* at 2028-30. The court also noted that life without parole is an "especially harsh" punishment for a juvenile because, under this sentence, "a juvenile offender will on average serve more years and a greater percentage of his life in prison than an adult offender." *Id.* at 2028.

The Eighth Amendment, the court asserted, requires that states provide their prisoners "some meaningful opportunity" to be released back into society. *Id.* at 2030. The court carefully noted, however, that the Eighth Amendment does not require that all juvenile non-homicide offenders actually obtain release:

> Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does forbid states from making the judgment at the outset that those offenders never will be fit to reenter society. *Id.*

Notably, the court did not discuss the constitutionality

of life sentences without the possibility of parole for inmates guilty of homicide crimes committed as juveniles.

The court granted Mr. Klinger a hearing on November 18, 2010, in which to hear the merits of his PCRA petition. The purpose of the hearing was to determine whether Mr. Klinger's sentence of life imprisonment was illegal or unconstitutional in light of the Supreme Court's recent *Graham* decision. Most of Mr. Klinger's testimony at the hearing was irrelevant to the instant petition because it did not address the underlying merits of his claim. Nevertheless, his testimony was enlightening to the court.

At the hearing, Mr. Klinger recounted the circumstances of his crime and listed his in-prison activities over the past thirty-nine years. While incarcerated, he received his GED, an Associate Degree in Business Administration, a Medical Assistant degree, and Red Cross certification. He stressed that he would pursue more advanced educational degrees but for regulations which prohibit state and federal funding for education for inmates serving life sentences. Mr. Klinger became a Certified Laubach Literacy tutor in 1988 and served as Secretary, Vice President, and Student/ Tutor Coordinator for the SCI-Dallas Literary Council.

According to the uncontroverted testimony, Mr. Klinger has also dedicated much time and effort to volunteer work with the Centurion Jaycees. He was elected President of the local chapter in 1977, and assumed leadership positions within various committees, including the Muscular Dystrophy Fund-Raising Drive, the Centurion Jaycee Newsletter, and the Jaycee

Education Committee. Mr. Klinger also instructed Jaycee-sponsored classes in Personal Dynamics, Leadership Dynamics, Communications Dynamics, and Genealogy. He received multiple awards from the Jaycees for his dedicated service, including a Certificate of Award for Outstanding and Meritorious Service in 1990. In a similar vein, Mr. Klinger served as Treasurer of the LIFE Association for inmates serving life sentences and as President of the SCI-Dallas chapter of Bread for the World, a national organization that supports legislation to combat poverty and hunger around the world. Additionally, he is an active member of the Protestant community in prison and currently serves on the church's Missions Committee.

Mr. Klinger has also maintained steady employment throughout his time in prison. He began as a library assistant where he established a card catalog system for the prison library. He worked as a test proctor and teacher's aide where he tutored students working towards their GED. He moved to the prison's Medical Department where he served as a hospital clerk and X-ray technician's assistant. While in the Medical Department, Mr. Klinger established and maintained a Tickler file system. After a short stint with the prison's Chaplaincy Program, he began working in the Education Department. He has acted as Clerk/Data Entry Operator in that department continually since 1988.

Mr. Klinger also testified regarding his history of commutation applications. Specifically, he has filed six applications for commutation of sentence during his time in prison; three of the six applications were recommended

by the Board of Pardons and forwarded to the governor for consideration. Former Governor Casey denied all three applications for commutation, in 1989, 1991, and 1993. In 2003, Mr. Klinger was denied a merit review hearing on his application for commutation, even though his previous three petitions were all recommended by the Board of Pardons.

Despite the foregoing, we have no choice but to dismiss Mr. Klinger's PCRA petition for the following reasons. The PCRA statute, 42 Pa. C.S. § 9543(a), clearly sets forth discrete bases for post-conviction relief; here, the defendant relies on Sections 9543(a)(2)(i) and (vii) to establish his right to relief. As noted above, the sentencing statute does not permit a court in Pennsylvania from imposing a lesser sentence than life imprisonment for first degree murderers. See 18 Pa. C.S. § 1102(a)(1); *Yount*, 615 A.2d at 1321. Therefore, Mr. Klinger's sentence of life imprisonment is not an illegal sentence warranting post-conviction relief as contemplated by Section 9543(a)(2)(vii).

Moreover, the cases in which courts have granted PCRA petitions because of constitutional violations offer no guidance for the determination at hand. Mr. Klinger bases his PCRA petition on the Supreme Court's recent decision in *Graham v. Florida*, and Pennsylvania courts have yet to develop any meaningful precedent under this decision. A plain reading of the court's opinion, however, demonstrates that Mr. Klinger's reliance on the decision is misplaced. The court in *Graham* only held unconstitutional sentences of life imprisonment without the possibility of parole for juveniles convicted of non-homicide crimes. *Graham*, 130 S. Ct. at 2034. The defendant was convicted

of first degree murder, a homicide, in 1972. The *Graham* decision does not apply to Mr. Klinger's sentence, and we cannot grant his PCRA petition on this basis.

Additionally, the defendant contested his first degree murder conviction via direct appeal, *Commonwealth v. Klinger*, 461 Pa. 606, 337 A.2d 569 (1975). The PCRA statute, therefore, bars relief under all other bases for post-conviction relief as previously litigated. See 42 Pa. C.S. § 9543(a)(3). Any post-conviction challenges besides those based on new case law are otherwise time-barred by the filing requirements in the statute. 42 Pa. C.S. § 9545(b).

In light of our inability to grant defendant's petition for post-conviction relief, we take this space to make certain observations about Mr. Klinger and life sentences without the possibility of parole for juveniles, generally. In the court's view, the United States Supreme Court should extend the *Graham* decision to encompass inmates, like Mr. Klinger, serving life sentences without the possibility of parole for homicide crimes committed as juveniles. We do not mean to say that all such inmates should be released on parole at some point during their lives; these inmates, however, deserve to retain a channel through which rehabilitated prisoners may obtain relief. The reasoning in *Graham* regarding juveniles' lessened culpability due to "lack of maturity and underdeveloped sense of responsibility" applies equally to juveniles serving life sentences without parole for non-homicide crimes as for homicide crimes. See *Graham*, 130 S. Ct. at 2026. The court acknowledged that "[j]uveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character' than are

the actions of adults." *Id.* According to that logic, juveniles who commit homicides are capable of change to the same extent that juveniles who commit other crimes are capable of meaningful change.

At the hearing on November 18, 2010, Mr. Klinger detailed his academic, emotional, and spiritual development from the time he entered prison as a seventeen year-old runaway to the present day. He testified that, as a seventeen year-old, he was self-centered, impulsive, and generally aimless. With nothing but prison time on the horizon, he decided to change for the better. He dedicated himself to learning and obtained the most advanced degree available. He became a leader within community volunteer organizations like the Jaycees, SCI-Dallas Literacy Council, and Bread for the World, and he maintained steady employment throughout his almost forty years in prison. Mr. Klinger was recommended for commutation three times by the Board of Pardons based on his exemplary record while in prison, but his application was denied by Governor Casey on each occasion. We feel that an inmate like Mr. Klinger -- by all accounts a model prisoner -- ought to have a meaningful opportunity to obtain release from prison through the parole process. Although Mr. Klinger is ineligible for parole, per se, we urge both the Board of Pardons and the governor to seriously consider any future applications Mr. Klinger might make for commutation of his sentence.

Pennsylvania sentences more juveniles to life sentences without the possibility of parole than any other state in the country. About 450 inmates in our prisons are serving

sentences of life without parole for crimes committed as juveniles. Approximately 2,500 inmates across the country are serving similar sentences, so Pennsylvania houses nearly 20 percent of those serving life sentences without parole for crimes committed as juveniles. See "Juvenile Life Without Parole," *Religion and Ethics News Weekly* (Jan. 30, 2009), available at http://www.pbs.org/wnet/religionandethics/episodes/january-30-2009/juvenile-life-without-parole/2081/; see also "The Rest of Their Lives: Life Without Parole for Juvenile Offenders in the United States," *Human Rights Watch* (Oct. 11, 2005). Furthermore, the United States sentences more juveniles to life without parole than any other nation in the world; therefore, Pennsylvania leads the nation, and the world, in a sentencing practice almost universally condemned. See Karen Heller, "Life Terms for Juveniles?," *Philadelphia Inquirer* (Jul. 18, 2010).

House Bill 1999 currently sits before the state legislature. The bill would abolish life without parole sentences for inmates convicted as juveniles and allow prisoners to apply for parole beginning at age 31, and every three years thereafter. Under the bill, current inmates could appeal for resentencing. *Id.* We recognize that our sentencing practices are out-of-step with most of the country, and the world, and hope that the legislature reforms juvenile criminal sentencing along these lines. As the court wrote in *Graham v. Florida:*

Life in prison without the possibility of parole gives no chance for fulfillment outside prison walls, no chance for reconciliation with society, no hope.

Maturity can lead to that considered reflection which is the foundation for remorse, renewal, and rehabilitation. A young person who knows that he or she has no chance to leave prison before life's end has little incentive to become a responsible individual. *Graham*, 130 S. Ct. at 2032.

We wholeheartedly encourage the legislature to rethink categorical imposition of life without the possibility of parole for all offenders sentenced as juveniles.

We feel compassion for Mr. Klinger. While he committed a heinous crime as a teenager, for which he must pay, he is clearly a different person now than at seventeen. Based on his steadfast dedication to emotional, academic, and spiritual growth, we recommend that the Board of Pardons and the governor seriously consider Mr. Klinger a candidate for commutation of sentence, if and when he chooses to file another application. We also believe, in light of juvenile sentencing practices across the country and throughout the rest of the world, that the Supreme Court should extend the holding in *Graham v. Florida* to encompass inmates serving life sentences without the possibility of parole for homicide crimes committed as juveniles. Under the post-conviction relief statute, 42 Pa. C.S. § 9543(a), and the *Graham* decision, however, we cannot grant Mr. Klinger's requested relief.

Accordingly, we enter the following order.

## ORDERED

And now, December 10, 2010, after hearing and review of briefs submitted, it is hereby ordered as follows:

1.   Defendant's petition for post conviction relief is denied

2.   Defendant is advised that he has thirty (30) days from the date of this order in which to file an appeal with the Superior Court of Pennsylvania.

3.   The clerk of courts shall serve a copy of this opinion and order upon the defendant at the SCI-Dallas correctional facility by certified mail return receipt requested. This service shall be in addition to the usual service upon all counsel of record.