454 A.2d 1072

**COMMONWEALTH of Pennsylvania**

v.

**Dale STITZEL, Appellant.**

Superior Court of Pennsylvania.

Submitted June 24, 1981.

Filed Dec. 30, 1982.

44

John H. Chronister, Assistant Public Defender, York, for appellant.

Floyd P. Jones, Assistant District Attorney, York, for Commonwealth, appellee.

Before PRICE,* BECK and JOHNSON, JJ.

JOHNSON, Judge:

Appellant, Dale Stitzel, was convicted by a jury of the crime of rape.[1] After denial of post verdict motions contesting only the sufficiency of the evidence to support the verdict, the trial court sentenced appellant to a term of imprisonment of nòt less than five years nor more than ten years. From this judgment of sentence, appellant appealed to this court. However, prior to decision, appellant's new appeal counsel petitioned for and was granted by this court a remand for purposes of conducting an evidentiary hearing as to the effectiveness of trial counsel's representation.[2] On March 31, 1980, an evidentiary hearing was held on appellate counsel's allegations of ineffective assistance by

* Died Jan. 30, 1983.

1. 18 Pa.C.S.A. § 3121(1)(2).

2. The order of Superior Court granting remand was entered February 15, 1980 at No. 258 March Term, 1979, Harrisburg District.

trial counsel. Subsequently, by order dated May 9, 1980, the hearing court dismissed appellant's "petition for new trial."[3] Now appellant pursues his appeal from the judgment of sentence.

In his brief, appellant raises two issues for our consideration. First, appellant questions the sufficiency of the evidence presented by the Commonwealth at trial to support his conviction for rape. Second, appellant asserts that trial counsel rendered ineffective representation.

Turning our focus to appellant's second issue, we note that appellant has lumped together in his brief four separate allegations of ineffectiveness under the general rubric of ineffective assistance of trial counsel. Since we find that one of appellant's allegations of ineffective assistance of trial counsel warrants reversal of judgment of sentence and a new trial, we will not discuss the other arguments appellant raises concerning the ineffectiveness of trial counsel,[4] nor will we discuss appellant's first issue.

In analyzing appellant's claim of ineffectiveness, we must first determine whether appellant raises an issue of arguable merit. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). If we conclude that appellant has raised an issue of arguable merit, we then must examine the approach employed by trial counsel in light of the available alternatives to determine whether counsel had

3. After remand appellant's new counsel filed a petition captioned "additional reasons for alleged ineffective assistance of counsel," to supplement the post trial motions filed earlier by prior counsel. Then new counsel filed a brief in support of his petition. The hearing court treated appellant's petition as a supplemental post-trial motion requesting a new trial, but it referred to appellant's petition as a "petition for new trial" in its order.

4. Appellant argues that trial counsel was ineffective for: (1) failing to preserve for appellate review the trial judge's decision not to remove juror #4 at trial, (2) insisting upon a completely new jury panel, rather than asking the trial judge to substitute a new juror for juror #4 and (3) failing to preserve for review the trial judge's decision not to remove a female juror who was allegedly flirting with an assistance district attorney who was present merely to observe the trial so that he could act as a substitute for the assistant district attorney trying the case should the need arise.

*some reasonable basis* designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

Appellant argues that trial counsel rendered ineffective assistance of counsel during the jury selection process when he omitted to ask juror # 4, Elmer S. Weaver, Jr., if he was acquainted with the victim's family, and thereby failed to ascertain that he was an acquaintance of the victim's father. Because trial counsel failed to ascertain that juror # 4 was acquainted with the victim's father, juror # 4 was sworn on the jury panel. At trial following the prosecutor's opening remarks, juror # 4 informed the court that he knew the victim's father. Trial counsel then requested a mistrial on the ground that juror # 4 was personally acquainted with the victim's father. Then, the trial judge conducted a voir dire examination of the juror in the presence of both counsel, but in the absence of the remaining jurors. The trial judge made several inquiries of the juror. In response to these inquiries the juror revealed that: (a) he had not been asked previously whether he knew the victim's father, (b) he knew the victim's father because of their mutual place of employment, (c) he knew the victim's father "fairly well," but (d) he did not know the victim personally or the rest of the victim's family. The juror also stated that he did not know anything about the case. Finally, the juror stated that he could put aside his acquaintance with the victim's father and render a fair verdict upon the evidence presented at trial. On the basis of these responses, the trial judge denied trial counsel's motion for mistrial.

In its opinion, the trial court concluded that while trial counsel may have been ineffective in the jury selection process, "the error, if any, was rendered harmless beyond a reasonable doubt by the court's [later] interrogation of the juror and [determination] that he could render a fair and impartial verdict." [5]

5. *Commonwealth v. Stitzel*, No. 688 Criminal Division, slip op. at 3–4 (C.P. York County May 9, 1980).

We recognize the possibility that the trial judge may have properly exercised his discretion to retain juror # 4 on the panel when the fact of acquaintance was disclosed at trial.[6] But, we do not here evaluate the trial judge's decision at trial, we evaluate trial counsel's stewardship during jury selection. We are here concerned with the alleged failure of trial counsel to ascertain during the jury selection process whether a potential juror (juror # 4) was acquainted with the family of the victim. Further, we note that in *Commonwealth v. Badger*, 482 Pa. 240, 244, 393 A.2d 642, 644 (1978), our supreme court disapproved of the use of a harmless error standard "in determining whether counsel is effective ... because assistance of counsel is among those constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error."[7] *See also Commonwealth v. Williams*, 273 Pa.Super. 147, 416 A.2d 1132 (1979). Therefore we must reject the harmless error analysis of the trial court and apply the traditional *Maroney-Hubbard* test for determining whether trial counsel rendered ineffective assistance of counsel.

We begin our analysis by determining whether the issue appellant raises has arguable merit. It is well settled that it is the duty of the parties to ascertain, by proper examination at the time the jury is empaneled, the existence of any reasons for objection to the jurors. *Commonwealth v. Aljoe*, 420 Pa. 198, 206, 216 A.2d 50, 54 (1966). It is the purpose of jury selection voir dire to provide counsel with an opportunity to determine if the prospective jurors are subject to challenge for cause. *Commonwealth v. Legree*, 256 Pa.Super. 128, 389 A.2d 634 (1978). Here, the thrust of the inquiry that trial counsel allegedly omitted is to determine the existence and depth of any acquaintance a potential juror has to the victim's relatives. The response that

6. In note 8 *infra*, we have expressed reservations as to the sufficiency of the inquiries made concerning juror # 4's acquaintance with the victim's father. These reservations extend to the exercise by the trial judge of his discretion to permit juror # 4 to remain upon the panel.

7. Citations omitted from the quotation.

would have been elicited may have provided grounds for a challenge for cause because of bias or the existence of a "close" relationship to the case. *See Commonwealth v. Colon*, 223 Pa.Super. 202, 299 A.2d 326 (1972). Hence, we believe it would have been proper voir dire to question juror # 4 regarding his acquaintance to the victim's father.

In essence, appellant argues further that the failure of his trial counsel to make this inquiry of juror # 4 precipitated a violation of his federally guaranteed right to a fair trial by an impartial jury. In *Commonwealth v. Cornitcher*, 447 Pa. 539, 551–2, 291 A.2d 521, 527 (1972), it was emphasized that when a defendant questions the impartiality of only one juror, a violation of his federal right to an impartial jury is implicated. Here juror # 4's response that he knew the victim's father "fairly well" indicates more than a passing acquaintance; rather it indicates a substantial connection with the victim's father, who at trial was a witness for the prosecution. This response alone may have been sufficient under *Colon, supra*, to cause the exclusion of the juror by invoking a presumption of the likelihood of prejudice.[8]

**8.** Even if we were not satisfied that the juror's response may have been sufficient basis for automatic exclusion to ensure the fairness of the trial, we still would be inclined to reach the same conclusion. Juror # 4's response during voir dire that he knew the victim's father "fairly well" simply was not sufficient to illuminate the depth of his acquaintance with the victim's father. The implication is that juror # 4 had some degree of friendship with the victim's father. Had there been further questioning to determine the depth of juror # 4's acquaintance with the victim's father, a basis for exclusion may have become more readily apparent. In *Schwarzbach v. Dunn*, 252 Pa.Super. 454, 457, 381 A.2d 1295, 1298 (1977), our court, citing *Commonwealth v. Stewart*, 449 Pa. 50, 295 A.2d 303 (1972), awarded a new trial to the defendant, Dunn, even though only a *potential* for prejudice was proved because of the lack of inquiry into the nature of the relationship of the prospective juror's wife to the counsel for the plaintiff. Certainly, the interests in a fair trial by an impartial jury in a criminal case are more paramount than in a civil case. While a civil litigant risks only money, a criminal defendant risks a substantial loss of liberty. Here, we will not speculate as to the depth of the relationship involved. However, in light of juror # 4's response, we are inclined to tip the balance in favor of insuring a fair trial, as did the court in *Schwarzbach, supra.*

For these reasons, we believe that appellant has raised an issue of arguable merit.

Next, we must weigh the alternatives available to trial counsel to determine whether trial counsel had *some reasonable basis*. We note initially that "sloth and lack of awareness" by trial counsel during jury selection may constitute ineffective assistance of counsel. *See Commonwealth v. Roundtree*, 469 Pa. 241, 364 A.2d 1359 (1976); *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975). Our inquiry is whether trial counsel made an informed choice, which at the time the decision was made reasonably would have been considered as advancing and protecting the appellant's interest. *Commonwealth v. Roundtree, supra.*

We begin our analysis by determining whether trial counsel did indeed fail to ask juror # 4 during the jury selection process whether he knew the victim's father. At trial during the trial judge's voir dire, juror # 4 stated that he had not been asked whether or not he knew the victim's father. At the evidentiary hearing following remand, trial counsel could not recall asking if anyone on the panel knew the victim's family.[9] Additionally, we note that trial counsel could not seem to recall correctly, at trial, what had been asked during jury selection.[10] There is evidence in the record that could reasonably support the inference that trial counsel did not inquire whether any of the potential jurors were acquainted with the victim's family.[11] From our re-

9. Notes of Testimony, Evidentiary Hearing, March 31, 1980 at 6.

10. *See* note 11 *infra*.

11. After the panel of jurors were sworn, another juror, juror # 24, was excused because she knew some of the people involved and the facts of the case. Neither counsel objected to her being excused. Then following the prosecutor's opening remarks, juror # 4 disclosed his acquaintance with the victim's father. Responding to an assertion by trial counsel that the prosecutor had inquired of all potential jurors whether they knew any party in the case, the prosecutor unequivocally denied having asked if any of the potential jurors knew the victim or the victim's family; rather he stated that he asked them if they knew the appellant or appellant's trial counsel. Juror # 4 later stated

view of the record, we conclude that there is sufficient credible evidence to establish that trial counsel failed to inquire of, at least, juror # 4, whether or not he was acquainted with the victim's family.

Trial counsel testified at the hearing that as a matter of strategy during jury selection, he did not want anyone on the jury who knew the victim, her family, or the appellant. Presumably that would include someone who knew the victim's father. Trial counsel went on to state that had he known about juror # 4's acquaintance with the victim's father, the mere potential of partiality would have caused him to challenge the juror.[12]

We note that had trial counsel made appropriate inquiries, and presumably gotten the same answers as did the trial judge during his voir dire, trial counsel would have had the option of attempting to challenge juror # 4 for cause [13] or, failing this, he could have exercised a peremptory chal-

that he had not been asked whether he was acquainted with the victim or her family. We believe it is fair to say that trial counsel did not recall at time of trial what happened during jury selection and may not have been fully attentive. While we do not know whether the jury selection voir dire was conducted individually or collectively, the controversy with both of these jurors and the prosecutor's statement leads us to believe that trial counsel may not have asked any of the potential jurors if they were acquainted with the victim's family.

12. Trial counsel did not elaborate upon what he meant by the word challenge. However, we presume trial counsel may have been referring to the exercise of a peremptory challenge, since earlier in testimony he stated that the relationship of juror # 4 was not so "close" as to constitute reversible error, thus indicating to us he may not have believed he could have challenged the juror for cause.

13. We recognize the possibility that juror # 4's relationship with the victim's father may not have been sufficiently "close" to warrant a challenge for cause during jury selection. *Compare Commonwealth v. Stamm,* 286 Pa.Super. 409, 429 A.2d 4 (1981) (where the relationship of a juror with some party was too remote to warrant automatic removal) *with Commonwealth v. Carter,* 444 Pa. 405, 282 A.2d 375 (1971) (where it was held that trial judge did not abuse his discretion in permitting a casual acquaintance of a relative of the victim to remain on the jury). However, see note 8 *supra,* where we expressed reservations as to the sufficiency of the inquiries made concerning juror # 4's acquaintance with the victim's father.

lenge.[14] Thus, had trial counsel made the appropriate inquiries, he would have had the means to eliminate juror # 4 from the jury panel.

From all the evidence in the record, we cannot say that trial counsel made a deliberate "informed choice" employed to advance the interests of his client.

Since "a finding of ineffectiveness [can] never be made unless [it can be] concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized," see *Commonwealth v. Badger, supra,* we next consider whether in this case the inquiry that trial counsel failed to make would have offered appellant a substantially greater potential for success.

From examination of the trial record, it is apparent that the evidence presented by either party did not overwhelmingly establish appellant's innocence or guilt, contrary to the implication in the trial judge's opinion on appellant's allegations of ineffectiveness. A more accurate observation about the evidence is that it distilled itself into a classic case of credibility whereby the jury's verdict hinged upon which version of the facts it found more credible, the victim's or the appellant's. Under these circumstances, of which trial counsel should have been aware, the presence of a juror potentially partial to the victim could have easily swayed the jury's determination of the crucial credibility issue. Trial counsel, had he ascertained the fact of acquaintance, would have had the opportunity to ensure his client a fair and impartial judgment at trial of his and the victim's respective credibilities by simply exercising a peremptory challenge to juror # 4. While we recognize that these considerations are to some degree speculative, the recognition of the possibility of prejudice or bias from such a relationship is certainly justification for our concluding that

14. Even without a challenge for cause basis, trial counsel would have exercised a peremptory challenge to insure the fairness of the trial. These circumstances are a paradigm case for the exercise of a peremptory challenge. *See generally, Commonwealth v. Henderson,* 497 Pa. 23, 32–3, 438 A.2d 951, 955 (1981). This much trial counsel confirmed during the evidentiary hearing.

trial counsel did a disservice to his client during jury selection when he failed to ask the appropriate questions which would have prompted him to remove this juror. *Cf. Commonwealth v. Black*, 474 Pa. 47, 376 A.2d 627 (1977). Under the circumstances of this case, the removal of this juror is obviously the course that offered a substantially greater potential for success, especially since the realization of this possibility of bias could very well be a decisive factor on the crucial issue of credibility in this case for juror # 4 and, through him, the remaining jurors.

We find no apparent reasonable basis in the record that dissuades us from concluding that trial counsel was ineffective. It is apparent from the record that trial counsel failed to implement, during jury selection, his own professed strategy of preventing persons who knew the victim or the victim's family from sitting on the jury. Indeed, the record supports the inference that trial counsel asked none of the potential jurors if they were acquainted with the victim or her family.[15] During the evidentiary hearing, trial counsel did not specify any other considerations so imperative as to justify him in permitting juror # 4 to remain on the panel, despite juror # 4's acquaintance with the victim's father.

We therefore hold, as we must, without regard for any harmless error analysis based on the voir dire held at trial, that trial counsel rendered ineffective assistance of counsel during the jury selection process by failing to ascertain that juror # 4 was acquainted with the victim's father. This failure foreclosed trial counsel from removing juror # 4 from the panel to ensure his client of a fair and impartial jury to determine the crucial issue of credibility that was sure to arise at trial.

We do not construe our holding today to require a finding of ineffective assistance of counsel any time trial counsel fails to ask a meritorious voir dire question; rather, we are persuaded that here the entire case hinged upon the credibilities of appellant and the victim, and trial counsel, through omission without reasonable basis, placed a poten-

15. See note 11 *supra.*

tially biased juror on the panel to the detriment of his client's interests.

We reverse the conviction and grant appellant a new trial.