477 A.2d 1364

**COMMONWEALTH of Pennsylvania**

v.

**Ernest BROWN, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 3, 1984.

Filed May 18, 1984.

Peter Levin, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CIRILLO, BECK and JOHNSON, JJ.

JOHNSON, Judge:

Following a non-jury trial before the Honorable Charles L. Durham, Appellant, Ernest Brown, was convicted on April 8, 1982 of third-degree murder,[1] aggravated assault,[2] and possession of an instrument of crime.[3] A timely appeal was taken to this court raising several questions for our consideration. We affirm.

Of paramount concern is Appellant's contention that he did not receive effective assistance of counsel because his trial attorney did not seek recusal of the trial judge. Appellant appeared before Judge Durham on April 5, 1982 expect-

1. 18 Pa.C.S. § 2502(c).

2. *Id.* § 2702.

3. *Id.* § 907(a).

ing to plead guilty to all charges, but he changed his mind during the guilty plea colloquy and informed Judge Durham that he wanted a jury trial. Following an off-the-record discussion between Appellant, his trial counsel, and the prosecuting attorney, Appellant Brown changed his mind again and told Judge Durham that he did not want a jury trial, but rather wished to be tried by a judge in the place of a jury.

The next day, April 6, 1982, Judge Durham heard and denied Appellant's suppression motion. Appellant had attempted to suppress a knife seized in his apartment and a statement which he had given to the police. Following Judge Durham's denial of Appellant's suppression motion, the trial court conducted a colloquy with Appellant concerning Appellant's waiver of a jury trial. After explaining the various aspects and procedural advantages of a jury trial, Judge Durham informed Appellant about his knowledge of the case and offered Appellant an opportunity to have his case heard by another judge. As the following excerpt from the trial transcript indicates the trial court's colloquy was quite thorough.

"Q. In hearing this Motion to Suppress, I passed upon the credibility of certain witnesses. It might have been against you; do you understand that?

A. Yes, I understand.

Q. If you care to have another Judge hear your case, I will send this to another court and another judge can hear your case without a jury if that is what you want; do you understand that?

A. I understand.

Q. I don't have to be the Judge to hear your case. You can still have a waiver trial, a trial without a jury, before another Judge; do you understand that?

A. I understand.

Q. Do you want me to hear the case without a jury?

A. Yes, sir, I do.

Q. Then, you understand that I am also the Judge that heard initially that you intended to plead guilty to third degree murder; do you understand that?

A. I understand.

Q. And you changed your mind and you said you wanted a jury trial. Then, you changed your mind again and said you wanted a waiver trial. I heard all of that; do you understand?

A. Yes, sir.

Q. Now, if you want me to recuse myself, that is to say if you want me to send it to another Judge to hear it, I will do that; do you understand that?

A. Yes.

Q. Do you still want me to hear the case?

A. I do.

Q. That is your own wish; is that correct?

A. That's right.

Q. Has anyone promised you anything to get you to waive your right to a jury?

A. No.

Q. Has anyone threatened you to get you to waive your right to a jury?

A. No.

Q. Do you have any questions? Are you satisfied with your lawyer?

A. Very satisfied.

Q. You are very satisfied with your lawyer?

A. Yes."

(N.T., 4/7/84, at 36, 37)

Appellant's present counsel argues that trial counsel was ineffective in failing to request recusal of the trial judge since the trial judge ruled against Appellant at the suppression hearing and was aware that Appellant had initially intended to plead guilty.

In *Commonwealth v. Badger*, 482 Pa. 240, 393 A.2d 642 (1978), as in the instant case, the defendant had pleaded guilty but then decided to withdraw her guilty plea. The

defendant was subsequently convicted following a non-jury trial before the same judge who initially heard the guilty plea. Defense counsel in *Badger* did not request recusal. Unlike the instant case, however, the trial judge did not offer to recuse himself.[4] The supreme court found that counsel's failure to request recusation constituted ineffectiveness and granted a new trial.

In the case at bar, as distinguished from *Badger*, the trial judge made certain that Appellant was aware of the fact that he had heard the suppression motion and was aware that Appellant had originally intended to enter a guilty plea. On two separate occasions the trial judge indicated that Appellant could have the case heard by another judge. The decision to continue to have Judge Durham hear the case was made by Appellant with full knowledge of the trial court's prior involvement in the case and with full knowledge the he could opt to have the case tried by another judge.

In analyzing Appellant's claim of ineffectiveness, we must first determine whether Appellant raises an issue of arguable merit. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). If we conclude that Appellant has raised an issue of arguable merit; we then must examine the approach employed by trial counsel in light of the available alternatives to determine whether counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). *See also Commonwealth v. Stitzel*, 309 Pa.Super. 43, 45, 46, 454 A.2d 1072, 1074 (1982).

In applying the traditional *Maroney-Hubbard* test for determining whether trial counsel was ineffective we must first look to see if an issue of arguable merit is raised. Since Judge Durham indicated on the record that he would recuse himself upon request, it is obvious that a motion for

4. *Commonwealth v. Badger*, 238 Pa.Super. 284, 287, 357 A.2d 547, 548 (1976), rev'd 482 Pa. 240, 393 A.2d 642 (1978).

recusal made by trial counsel with Appellant's consent would have been granted. *Commonwealth v. Jones,* 259 Pa.Super. 103, 393 A.2d 737 (1978). Under these circumstances we must conclude that this issue has arguable merit.

We next focus on the stewardship of counsel to see if trial counsel's approach had some reasonable basis to effectuate his client's interests in light of the alternatives available to him. It is important to note in the instant case that the trial judge raised the issue of recusal himself and, therefore, a motion by trial counsel was not necessary to direct the court's attention to the recusal issue. Moreover, Appellant himself had already explicitly indicated to Judge Durham that he wanted him to hear the case.

The decision to waive a jury trial is ultimately and solely the defendant's. *Commonwealth v. Boyd,* 461 Pa. 17, 29–30, 334 A.2d 610, 616 (1975). We believe that a decision by the defendant to insist that a particular judge try a non-jury case is also solely the defendant's decision and his counsel will not be deemed to be ineffective as long as the defendant makes the decision to remain before a particular judge with full knowledge of that particular judge's prior involvement coupled with the knowledge that, upon request, he could have another judge hear the case. *Commonwealth v. Nash,* 292 Pa.Super. 79, 436 A.2d 1014 (1981).

Once Appellant decided to proceed with a non-jury trial before Judge Durham, trial counsel was precluded from moving for recusal. Had trial counsel sought recusal of the trial court under these circumstances, his actions would have been contrary to the express wishes of his client. We refuse to brand trial counsel as ineffective on this recusal issue.

Next the denial by the trial court of the suppression motion prompted Appellant to raise two issues on appeal. He takes the position that the trial court erred in not suppressing the knife found in Appellant's apartment and

the statement given by Appellant to the police. We disagree and find that the trial court properly denied the suppression motion.

The evidence presented at the suppression hearing was set forth by the trial court in the following manner:

"On October 13, 1981, in the late afternoon, Officers Peter Koblynk and Harold Guyton of the Philadelphia Police Department responded to a radio call reporting a stabbing at 19th and Sharswood Streets in Philadelphia. Upon their arrival on the scene they observed a body lying on the street in a pool of blood with gashes visible on the arm and chest. The body, that of a black male later identified as Willie Brown, was taken to St. Joseph's Hospital and determined to be dead on arrival. Officer Guyton, upon overhearing a male on the scene say, "He shouldn't have stabbed my homey", followed that individual for approximately one-half of a block from the scene where he identified the defendant who was hanging out of the second floor window of a building as the person who had done the stabbing. From the street the officers observed that the defendant's right hand was covered with blood. When the police entered his apartment defendant was arrested and a blood-stained knife found on a chair a foot away from where defendant was standing was seized. Upon his arrest at the Police Administration Building the defendant was given his *Miranda* warnings by Detective Lynch and waived his rights to remain silent and to have counsel present before giving a statement which he signed. At the time that the warnings were given to him by Detective Lynch the defendant appeared alert and not under the influence of alcohol or any intoxicants. The defendant declined an offer of treatment for what appeared to be a laceration of his right hand and a swelling of his right eye. No threats or promises were made to induce the defendant to give a statement.

The defendant took the stand [the next morning] and admitted that he had been given his warnings and had wished to make a statement. However, the defendant

denied having understood that had he so desired he could have been furnished with an attorney free of charge prior to giving his statement.

(Opinion, 2/8/83, at 2, 3).

■ Appellant argues that the knife found by the police in his apartment should have been suppressed since it was seized in a warrantless search. In support of his contention Appellant's counsel suggests that Appellant may either have been in the hallway of his own apartment or on the street being led to the police van at the time Officer Guyton picked up the knife. This assertion is remarkable in light of trial counsel's admission that the Appellant had not been removed from the room where he was arrested when Officer Guyton found the knife (N.T. 4/7/82, at 13).

As stated in *Commonwealth v. Henkel*, 306 Pa.Super. 346, 350–351, 452 A.2d 759, 761–762 (1982):

The Fourth Amendment safeguard against unreasonable searches and seizures is aimed at deterring, inter alia, physical entry into the home. *U.S. v. U.S. District Court*, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). Securing a warrant under the discernment of a detached and impartial issuing authority prevents the dangers of unfettered intrusions into such sacrosanct environments. *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). As a result, warrantless searches and seizures inside a home are presumptively unreasonable. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). This presumption can be overcome where a lawful arrest necessitates the search and seizure of dangerous weapons within reach of the accused in the interest of insuring the safety of the arresting officers. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Commonwealth v. Bess*, 476 Pa. 364, 382 A.2d 1212 (1978). Neither *Chimel*, supra, nor *Bess*, supra, permit searches of that portion of the premises beyond the accused's immediate control.

The aforementioned principles of law have recently been expanded; therefore, we hold that arresting officers

are permitted to conduct a brief search of the entire building, within which the accused is arrested, for the limited purpose of seeking other people who may threaten the officers' well being, provided, of course, that such officers have reason to believe that other people are present.

In *Commonwealth v. Norris*, 498 Pa. 308, 446 A.2d 246 (1982), the arresting officers broke into defendant's apartment with neither an arrest nor search warrant, detained and arrested the defendant in the living room and then seized a knife in plain view on a bedroom nightstand. The arresting officers were apprised by the victim, after she identified the defendant as her assailant, that she had been forcibly raped at knifepoint. Furthermore, reliable sources raised suspicion that the defendant's brother inhabited the apartment too.

The *Norris* court concluded that the officers were permitted a cursory search of the other rooms, even after the defendant was detained, in order to insure their safety from the brother or another person whose presence was reasonably suspected, but not unequivocally known. Having lawfully entered the bedroom, the officers were in a position to rightfully seize whatever instruments of crime that were in plain view. *Coolidge v. New Hampshire*, supra; *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

If police officers can properly seize a knife in plain view in an adjoining room incident to a lawful arrest of the accused on the suspicion that another person may be present in the apartment, then certainly they can seize a knife in plain view in the very room where the arrest of a person believed to be dangerous was made.

■ Appellant also seeks to have suppressed the statement given to the police shortly after his arrest. Before this court, he argues that the statement should have been suppressed because it was not shown to have been voluntary in light of his injuries and because he did not understand the waiver of his constitutional rights.

At the suppression hearing, however, Appellant's trial counsel asserted only one argument for suppressing the statement. Appellant argued that he did not understand an attorney would have been provided free of charge if he could not afford an attorney (N.T. 4/7/84, at 8). None of the arguments advanced before this court was presented at the suppression hearing. These arguments which also were included in the pre-trial and post-trial motions, were, therefore, abandoned at the suppression hearing and cannot be revived here. *See Commonwealth v. Urbina,* 290 Pa.Super. 117, 118–119 n. 3, 434 A.2d 157, 158 n. 3 (1981).

Appellant also raises several alleged errors committed by the trial court arising from the non-jury trial. According to Appellant, the trial court should have found him not guilty by reason of self-defense.

18 Pa.C.S. § 505(a) addresses the use of force in self-protection.

"**(a) Use of force justifiable for protection of the person.**—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion."

18 Pa.C.S. § 505(b)(2) specifically indicates when the use of deadly force is not justifiable. This subsection states in relevant part:

"(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand

that he abstain from any action which he has no duty to take...."

In evaluating the evidence to ascertain whether Appellant demonstrated compliance with 18 Pa.C.S. § 505, we must accept as true all evidence, together with all reasonable inferences therefrom, upon which the trier of facts could properly have based its verdict. *Commonwealth v. Miller*, 303 Pa.Super. 504, 450 A.2d 40 (1982). The findings by a judge sitting as the trier of fact are entitled to the same weight as a jury verdict, *Commonwealth v. Coe*, 226 Pa.Super. 594, 323 A.2d 213 (1974).

The facts found by the court at the non-jury trial were summarized in its February 8, 1983 opinion.

"On October 13, 1981 at approximately 3:00 p.m. the Defendant went to the B & J Lounge located at 1431 North 19th Street in Philadelphia. Willie Brown, the decedent, and Cornell Carpentier ("Boo"), who was wounded in the incident, were also present along with approximately 12 other persons, some of whom were employees, other patrons [sic]. The defendant, evidently under the influence of alcohol, began arguing with Willie Brown and pulled out his knife. Defendant was persuaded to leave the bar at that point, but returned within forty-five minutes. Upon his return, the defendant again became involved in an argument with Boo, threatening to cut him and others in the bar and pulling out his knife. Boo hit the defendant who then wielded his knife at Boo and Willie Brown. Boo was seen leaving the bar bleeding from the upper leg. Brown was observed, covered with blood, leaving the bar and crossing the street where he collapsed on the sidewalk. The defendant was then observed beating the decedent with a pool cue while he lay on the street. The Commonwealth produced three eyewitnesses who testified to the foregoing series of events, Betty Williams, Virginia Lonsome and Betty Cuthbert.

Dr. Halbert Fillinger testified that he performed a post-mortem examination on the body of Willie Brown on October 14, 1981 and found that the cause of death was a

stab wound to the chest which pierced the wall of the heart.

The defense presented evidence to establish that the homicide of Willie Brown and the assault of Cornell Carpentier were done in self-defense. William Wolford who was present at the time of the incident testified that he observed a straight razor in the decedent's hand during the fight. The defendant testified that when he returned to the bar after the first altercation decedent threatened to kill him, punched him in the nose and cut him on the hand with a razor while Boo, unarmed, proceeded to stomp and hit him. Defendant further testified that the wounds inflicted on Brown and Carpentier resulted from his attempts to protect himself as he was lying on the ground as a result of their aggressions. Finally, the defense introduced evidence that the decedent, Willie Brown, had been convicted of aggravated assault on March 10, 1981." (Opinion, 2/8/83, at 4–5) (footnote omitted)

We believe the trial court correctly concluded that Appellant's use of deadly force in this case was not justifiable on the grounds of self-defense.

The record clearly reflects that Appellant provoked the use of force against himself when he returned to the B & J Lounge later in the afternoon of October 13, 1981. Appellant began to argue with "Boo" Carpentier and call him obscene names. When Appellant reached into his pocket for the knife that earlier he had brandished in a threatening manner, "Boo" Carpentier responded by hitting Appellant.

Additionally, Appellant could have retreated from the confrontation. Instead of retreating when the decedent, Willie Brown, attempted to break up the fight, Appellant stabbed the decedent. Therefore, Appellant's use of force was not justified under either 18 Pa.C.S. § 505(b)(2)(i) or (b)(2)(ii).

Another argument made by Appellant is that the trial court erred in not reducing the degree of homicide

from murder of the third degree to voluntary manslaughter since the Appellant's self-defense argument "clearly has some merit on the record" Appellant's brief at 17. This argument must fail, however, because the trial judge did not find merit in the self-defense argument. Moreover, the mere raising of a self-defense argument does not mean that one cannot be convicted of murder. In the instant case sufficient evidence of record exists to support the third-degree murder conviction.

Appellant further argues that the trial court abused its discretion by not allowing Appellant to cross-examine Betty Williams concerning the violent past of the decedent. We find no abuse of discretion, however, since the entire record including Appellant's own testimony does not reflect that Appellant knew of the decedent's alleged violence. Appellant must be aware of the alleged violent propensities of the victim, for testimony concerning the alleged violence to have probative value for self-defense purposes. *Commonwealth v. Horne*, 479 Pa. 496, 388 A.2d 1040 (1978). Without Appellant's knowledge of the alleged violence, testimony concerning the alleged violence would have been irrelevant even if true.

Appellant contends the trial court committed additional error when it permitted the Commonwealth to cross-examine reluctant defense witnesses beyond the scope of direct examination. It is alleged that the prosecution sought to expand the direct testimony of defense witnesses, William Wolford and Willie Williams. Both Wolford and Williams gave direct eyewitness testimony about the fight between Appellant and the decedent. We find the trial court correctly ruled that the prosecution's cross-examination was proper. Questions about what happened in the bar immediately before the fight are within the scope of testimony on direct of what occurred during the fight itself. The scope and manner of cross-examination are within the trial court's discretion and the trial court will not be reversed unless there is an abuse of discretion or error of law. *Commonwealth v. Sisco*, 484 Pa. 85, 398 A.2d 955 (1979);

*Commonwealth v. Hammond,* 308 Pa.Super. 139, 454 A.2d 60 (1982).

Finally, Appellant contends that he did not receive effective assistance of counsel because of his counsel's failure to locate two potential exculpatory defense witnesses. No indication is given concerning the nature of the proposed testimony of these exculpatory witnesses. A bare assertion by counsel that the testimony of certain witnesses would be exculpatory without a showing of how this testimony would have strengthened Appellant's defense is not a sufficient basis for a finding by this court of ineffective assistance of counsel. *Commonwealth v. Nelson,* 311 Pa. Super. 1, 456 A.2d 1383 (1983).

Judgment of sentence affirmed.

BECK, J., concurs in the result.