389 A.2d 634

COMMONWEALTH of Pennsylvania, Appellee,

v.

Herbert C. LEGREE, Appellant.

Superior Court of Pennsylvania.

Submitted June 13, 1977.

Decided July 12, 1978.

130

John R. Merrick, Public Defender, Harry W. Farmer, Jr., Assistant Public Defender, West Chester, for appellant.

James Curtis Joyner, Assistant District Attorney, West Chester, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

The instant appeal arises from appellant's conviction, following a trial by jury, of possession of a controlled substance and possession with intent to deliver a controlled substance. Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780–113(a)(16) & (30) (1977). The controlled substance was heroin and appellant received a sentence of 11½ to 23 months in prison. There is no quarreling with the sufficiency of the Commonwealth's evidence; appellant sold four bags of heroin to an informant in the presence of an undercover narcotics agent, Shirley Dows. Agent Dows paid appellant forty dollars for the drugs and noted that appellant had approximately twenty more bags of heroin in his possession at that time. Appellant's assignments of

error are: (1) The Commonwealth failed to bring him to trial within 180 days from the filing of the complaint; (2) The court erred in not permitting a particular question to be asked of prospective jurors on voir dire; and (3) The court erred in permitting the Commonwealth to offer testimony concerning its unsuccessful efforts to locate its missing witness, informant Diane Lazur. Finding no error in any of these matters, we will affirm.

The complaint in the instant case was filed on April 23, 1975 and, following a preliminary hearing and indictment, appellant was initially brought to trial on September 10, 1975. The Commonwealth had just begun presenting its case in chief when a mistrial was declared on appellant's motion. Trial was then rescheduled for Monday, October 20, 1975, the one hundredth and eighty-second day from the filing of the complaint, but only the fortieth day from the date of the mistrial declaration. The defendant on that date filed a motion to dismiss pursuant to Pa.R.Crim.P., Rule 1100(f) and the Commonwealth filed a petition for an extension of time pursuant to Rule 1100(c), alleging the previous mistrial as the reason for its inability to bring appellant to trial within 180 days. In addition, the Commonwealth asserted no petition was necessary because the Commonwealth had 120 days following the mistrial to retry appellant. Pa.R.Crim.P., Rule 1100(e)(1). Appellant argued that the Commonwealth's petition must be denied because it was not filed until the one hundredth eighty-second day following the complaint, to which the Commonwealth responded that Monday, October 20th was deemed to be the one hundredth eightieth day because, otherwise, the last day of the period would fall on a Saturday.[1] The court granted the Commonwealth its extension, denied appellant's motion to dismiss, and the case proceeded to trial the following day.

1. In addition, the Commonwealth noted that it could not have filed the petition later than Tuesday of the preceding week because the courts were adjourned for the Chester County Bench-Bar Conference Wednesday, Thursday and Friday of that week.

 We are persuaded that the Commonwealth did not have to file a petition for an extension, because it brought appellant to trial within 120 days from the date of the first, aborted trial. Rule 1100(e)(1) provides:

"When the trial court has granted a new trial and no appeal has been perfected, the new trial shall commence within one hundred and twenty (120) days after the date of the order granting a new trial."

Obviously, the rule only establishes when a new trial must commence; it does not attempt to define what constitutes an "old trial." Under appellant's interpretation of the rule, for which he cites no authority, a "new trial" can only occur when a previous trial went to a *verdict* which was overturned for one reason or another. We do not believe such a narrow interpretation of the scope of the rule is warranted. First, for the purpose of Rule 1100, trial had commenced on September 10, 1975, and it is not logical to hold that a subsequent event which caused a mistrial eradicated the fact of the trial's commencement as if it never existed. Second, the scheduling problems which follow the granting of a mistrial are not substantially greater than those which follow the granting of a new trial when no appeal is taken. Finally, applying Rule 1100(e)(1) to mistrial would not create the gaping loophole in Rule 1100 that the Supreme Court refused to afford to the use of nolle prosequis in *Commonwealth v. Whitaker,* 467 Pa. 436, 359 A.2d 174 (1976). The principal difference is that, subject to the court's approval, nolle prosequis may be voluntarily taken by the Commonwealth despite the defendant's objection. Pa.R.Crim.P., Rule 314. That is not the case with mistrials which, on the contrary, may be granted only on defendant's motion or on motion of court, despite the Commonwealth's objection. Pa. R.Crim.P., Rule 1118. Furthermore, if the Commonwealth deliberately provokes a mistrial in order to gain the extension of time to which it would not be entitled under Rule 1100(c), the double jeopardy clause of the constitution operates as a bar to further prosecution. *Commonwealth v. Bolden,* 472 Pa. 602, 640–43, 373 A.2d 90 (1977). Hence,

there is no substantial reason for treating a trial following a mistrial differently from a new trial following one which went to verdict. See *Commonwealth v. Manley,* 252 Pa.Super. 77, 89–95, 380 A.2d 1290, 1295–99 (1977). (Dissenting Opinion by Hoffman, J.) Therefore, the Commonwealth did not need to file a petition for an extension of time since it retried appellant within 120 days from the date of the mistrial.[2]

Appellant next argues that the court erred in refusing to ask prospective jurors the following question on voir dire: "Because Herbert C. Legree is here in Court, as charged, do you feel he must be guilty of something?" Appellant contends that the court's refusal to ask this question prevented appellant from learning whether jurors had any preconceived notions equating arrest with guilt.

It is fundamental that the proper scope of voir dire examination rests in the sound discretion of the trial judge. *Commonwealth v. Biebighauser,* 450 Pa. 336, 346, 300 A.2d 70 (1973); *Commonwealth v. Hoss,* 445 Pa. 98, 107, 283 A.2d 58 (1971). The scope of voir dire should be limited to determining whether a juror is subject to being challenged for cause, for lack of qualifications, or for holding a fixed opinion or bias. Voir dire is not designed to provide counsel with a basis for exercising preemptory challenges. *Commonwealth v. Lopinson,* 427 Pa. 284, 234 A.2d 552 (1967); *Commonwealth v. Rainey,* 242 Pa.Super. 39, 363 A.2d 1148 (1976). In this regard, generally speaking, the ordinary prejudices of veniremen are beyond the pale of exploration on voir dire.[3] As our Supreme Court stated in *Commonwealth v. Johnson,* 452 Pa. 130, 136, 305 A.2d 5, 8 (1973):

---

**2.** In light of our disposition of this issue it is unnecessary for us to reach appellant's additional argument that the Commonwealth's petition for an extension was not timely. But see *Commonwealth v. O'Shea,* 465 Pa. 491, 495 n. 4, 350 A.2d 872 (1976).

**3.** An exception is recognized, more or less, for racial prejudice. *See,* e. g., *Ham v. South Carolina,* 409 U.S. 524, 526–27, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973). Compare *Commonwealth v. Brown,* 464 Pa. 625, 347 A.2d 716 (1975) with *Ristaino v. Ross,* 424 U.S. 589, 96 S.Ct.

"The law recognizes that it would be unrealistic to expect jurors to be free from all prejudices, a failing common to all human beings. We can only attempt to have them put aside those prejudices in the performance of their duty, the determination of guilt or innocence. We therefore do not expect a tabula rosa but merely a mind sufficiently conscious of its sworn responsibility and willing to attempt to reach a decision solely on the facts presented, assiduously avoiding the influence of irrelevant factors."

In the instant case appellant merely sought to determine whether the jurors "felt" some prejudice against appellant's case simply because he had been hailed before the court to respond to criminal charges. However, even if a prospective juror had answered appellant's proposed question, "Yes," he could not have been successfully challenged for cause without further inquiry. The question merely would lead to cross-examination of the venireman on the matter, rather than providing an immediate basis for a challenge. The issue on voir dire is whether such an opinion is *fixed* so that it would lead the juror to ignore the law, the evidence, or the charge of court. Since a fixed bias or opinion is the target on voir dire, the question appellant sought to have asked was, at best, improperly phrased and therefore immaterial. In *Commonwealth v. England,* 474 Pa. 1, 375 A.2d 1292 (1977) defense counsel on voir dire similarly attempted to inquire into the veniremen's personal beliefs concerning the presumption of innocence. In upholding the trial court's refusal to ask the propounded question our Supreme Court pertinently said:

"The inappropriateness of the question is further compounded by the fact that it was framed in terms of whether the venirepersons [sic] privately agreed with two fundamental concepts in the criminal law: the burden of the Commonwealth to prove guilt beyond a reasonable doubt and the right of the accused to remain silent. *A*

1017, 47 L.Ed.2d 258 (1976). See also *Commonwealth v. Futch,* 469 Pa. 422, 428 n. 4, 366 A.2d 246 (1976).

*prospective juror's personal views are of no moment absent a showing that these opinions are so deeply embedded as to render that person incapable of accepting and applying the law as given by the court."* *Id.,* 474 Pa. at 8, 375 A.2d at 1296. [Emphasis added.]

In the instant case a prospective juror's "feelings" concerning the presumption of innocence to which appellant was entitled were of no moment, except to the extent that those feelings were unalterable. Since appellant's question did not address the fixed nature of such feelings, it need not have been asked. See also *Commonwealth v. Rolison,* 473 Pa. 261, 374 A.2d 509 (1977).

■ Lastly, appellant argues that the court erred in permitting the Commonwealth to demonstrate that the eyewitness-informant, Diane Lazur, was not at trial despite the Commonwealth's best, albeit unsuccessful, efforts to locate her. Obviously, in offering such evidence the Commonwealth was attempting to avoid, or at least mitigate, the benefit of a "missing witness" charge which the accused might be entitled to have the jury receive. In fact, the court did instruct the jury on its power to infer from the absence of Ms. Lazur that her testimony would have been unfavorable to the Commonwealth, unless her absence were reasonably explained. Hence, the Commonwealth's evidence in this regard was relevant to rebut this inference and, as such, was admissible. Cf. *Commonwealth v. Bird,* 240 Pa. Super. 587, 361 A.2d 737 (1976).

For the foregoing reasons, the judgment of sentence is affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.