545 A.2d 309

**COMMONWEALTH of Pennsylvania**

v.

**Leroy MYERS, Appellant.**

Superior Court of Pennsylvania.

Submitted March 21, 1988.

Filed July 1, 1988.

Reargument Denied Aug. 18, 1988.

42

John Packel, Assistant Public Defender, Philadelphia, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com., appellee.

Before WIEAND, MONTGOMERY and HESTER, JJ.

WIEAND, Judge:

Leroy Myers was tried by jury and was found guilty of kidnapping,[1] false imprisonment,[2] rape,[3] simple and aggra-

1.  18 Pa.C.S. § 2901.

2, 3.   See notes 2 and 3 on page 43.

vated assault,[4] and possession of an instrument of crime.[5] Post-trial motions were denied,[6] and Myers was sentenced to serve consecutive terms of imprisonment of ten to twenty years for rape, seven and one-half to fifteen years for kidnapping, and two and one-half to five years for possession of an instrument of crime.[7] On direct appeal from the judgment of sentence, Myers argues that the trial court (1) abused its discretion by refusing a defense request to ask potential jurors if they were members of Women Organized Against Rape or a similar group; and (2) committed error by instructing the jury that a pair of scissors could be found to be an instrument of crime.

On Thursday afternoon, April 12, 1984, at or about 3:00 p.m., appellant persuaded Mrs. Rosemary Brown, who had been his girlfriend and who earlier had lived with him, to accompany him to his residence at 3531 Aspen Street in Philadelphia. Upon arriving at appellant's residence, Mrs. Brown was asked to go upstairs to the bedroom so that she and appellant could talk. In the bedroom an argument erupted, and during the course thereof appellant picked up a pair of scissors and struck Mrs. Brown in the face, breaking her nose. After further struggle, appellant directed Mrs. Brown to undress and lie down on the bed. She complied. Appellant then tied Mrs. Brown's hands and feet to the bed and began to make threats on her life. At one point he displayed a knife, which he held close to her throat, and threatened to puncture her lungs with it. Appellant also beat Mrs. Brown about the body with a wooden club. After she had been beaten and while still tied to the bed, Mrs. Brown was raped. According to her testimony, she

2. 18 Pa.C.S. § 2903.
3. 18 Pa.C.S. § 3121.
4. 18 Pa.C.S. §§ 2701, 2702.
5. 18 Pa.C.S. § 907(a).
6. The jury had found Myers not guilty of involuntary deviate sexual intercourse and intimidation of witnesses or victims.
7. The conviction for false imprisonment was held to merge with the kidnapping conviction for purposes of sentencing, and sentence was suspended on the assault offenses.

was held captive until the morning of Sunday, April 14, 1984, when she was able to escape. At trial, appellant admitted that he had had a fight with Mrs. Brown, but he denied raping her, contending that the sexual acts had been consensual.

In *Commonwealth v. Clark*, 280 Pa.Super. 1, 421 A.2d 374 (1980), *aff'd*, 501 Pa. 393, 461 A.2d 794 (1983), this Court reviewed the applicable law as follows:

> The scope of our review of the voir dire questioning is limited since the extent of the examination is within the sound discretion of the trial judge, and we will not reverse absent palpable error. *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977); *Commonwealth v. Kahley*, 467 Pa. 272, 356 A.2d 745 (1976). The scope of voir dire should be limited to questions attempting to disclose lack of qualification and whether the juror has formed a fixed opinion as to the accused's guilt or innocence. *Commonwealth v. England*, 474 Pa. 1, 375 A.2d 1292 (1977); *Commonwealth v. Legree*, 256 Pa.Super. 128, 389 A.2d 634 (1978). It is not designed to provide a basis for peremptory challenge, and thus, "generally speaking, the ordinary prejudices of veniremen are beyond the pale of exploration on voir dire." *Commonwealth v. Legree, supra*, 256 Pa.Superior Ct. at 133, 389 A.2d at 634 (recognized exception for racial prejudice). We are conscious that it would be unrealistic to expect jurors to be free from all prejudices, and therefore, we require only that jurors be conscious of their sworn responsibility and attempt to reach a decision solely on the facts presented. *Commonwealth v. England, supra; Commonwealth v. Johnson*, 452 Pa. 130, 305 A.2d 5 (1973).

*Id.*, 280 Pa.Superior Ct. at 13, 421 A.2d at 380. See also: *Commonwealth v. Drew*, 500 Pa. 585, 459 A.2d 318 (1983); *Commonwealth v. Hathaway*, 347 Pa.Super. 134, 500 A.2d 443 (1985); *Commonwealth v. DeMarco*, 332 Pa.Super. 315, 481 A.2d 632 (1984); *Commonwealth v. Legree*, 256 Pa.Super. 128, 389 A.2d 634 (1978). "The sole purpose of voir

dire is to provide the accused with a competent, fair, impartial and unprejudiced jury." *Commonwealth v. Robbins,* 358 Pa.Super. 225, 232, 516 A.2d 1266, 1270 (1986). See also: *Commonwealth v. England,* 474 Pa. 1, 375 A.2d 1292 (1977); *Commonwealth v. Richmond,* 316 Pa.Super. 304, 462 A.2d 1362 (1983); *Commonwealth v. Holland,* 298 Pa.Super. 289, 444 A.2d 1179 (1982); *Commonwealth v. Davis,* 282 Pa.Super. 51, 422 A.2d 671 (1980).

■ Appellant in this case requested the trial court to ask prospective jurors whether they or close relatives or friends had ever been a member of Women Organized Against Rape or a similar group. The trial court refused the request. Appellant argues that the court's refusal denied him the opportunity to explore potential prejudice on the part of the jury and, as such, was an abuse of discretion entitling him to a new trial. In support of this argument, appellant asserts that membership in a group such as Women Organized Against Rape may establish an affinity between juror and rape victim sufficient to support a challenge for cause. We disagree.

With respect to challenging a juror for cause the Supreme Court has said:

The test for determining whether a prospective juror should be disqualified is whether he or she is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor, *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973). It must be determined whether any biases or prejudices can be put aside on proper instruction of the court, *Commonwealth v. Drew,* 500 Pa. 585, 459 A.2d 318 (1983). A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrate a likelihood of prejudice by his or her conduct and answers to questions, *Commonwealth v. Colon,* 223 Pa.Super. 202, 299 A.2d 326

(1972). The decision on whether to disqualify is within the sound discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion, *Commonwealth v. Black*, 474 Pa. 47, 376 A.2d 627 (1977).

A remote relationship to an involved party is not a basis for disqualification where a prospective juror indicates during voir dire that he or she will not be prejudiced. *Commonwealth v. Colson*, 507 Pa. 440, 454, 490 A.2d 811, 818 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). See also: *Commonwealth v. DeHart*, 512 Pa. 235, 516 A.2d 656 (1986); *Commonwealth v. Hashem*, 363 Pa.Super. 111, 525 A.2d 744 (1987); *Commonwealth v. Short*, 278 Pa.Super. 581, 420 A.2d 694 (1980).

In *United States v. Salamone*, 800 F.2d 1216 (3rd Cir. 1986), the United States Court of Appeals for the Third Circuit held that a district court had abused its discretion in a trial involving alleged violations of gun control laws by systematically excluding prospective jurors who were members of the National Rifle Association. In reaching this conclusion, the Court of Appeals reasoned as follows:

"Jury competence is an individual rather than a group or class matter." *Thiel v. Southern Pacific Co.*, 328 U.S. 217, 220, 66 S.Ct. 984, 986, 90 L.Ed. 1181 (1946). Challenges for cause "permit rejection of jurors on narrowly specified, provable and legally cognizable bas[e]s of partiality." *Swain v. Alabama*, 380 U.S. 202, 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759 (1965). The central inquiry in the determination whether a juror should be excused for cause is whether the juror holds a particular belief or opinion that will "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). See also *Patton v. Yount*, 467 U.S. 1025, 1036–37, [& n. 12], 104 S.Ct. 2885, 2891–92 & n. 12, 81 L.Ed.2d 847 (1984) (noting that the constitutional standard for juror impartiality rests on the determination whether "he can lay aside his opinion and render a verdict based on the

evidence presented in court"). Juror bias need not be established with "unmistakable clarity." *Witt,* 105 S.Ct. at 852. Thus, the factual determination by the trial court whether a juror can in fact serve impartially is entitled to "special deference" by the reviewing court. *Yount,* 104 S.Ct. at 2892. In the instant appeal, however, at no time were the excluded jurors questioned as to their ability to faithfully and impartially apply the law. Indeed, no inquiries whatsoever were directed to the excluded jurors to determine the nature and extent of their commitment to any principles that might have impaired their ability to serve impartially. While we recognize that the scope and content of voir dire is committed to the sound discretion of the trial court, that discretion will "include[ ] the decision as to what questions should be asked when the court itself decides to examine the prospective jurors *so long as inquiries relevant to the discovery of actual bias are not omitted."* United States v. Dansker,* 537 F.2d 40, 56 (3d Cir.1976) (emphasis added). Where the appropriate inquiries have been made and the district court has made a judgment on the basis of the jurors' responses, normally, that judgment will not be disturbed. The usual factors cautioning restraint in appellate review, i.e., credibility and demeanor evidence, however, are simply absent from this record. Thus, the "factual determination" by the district court in the instant appeal, being totally devoid of any foundation, leaves us with the single conclusion that the voir dire was inadequate to preserve and protect the rights of the accused. *See Dennis,* [*v. United States* ], 339 U.S. [162] at 168, 70 S.Ct. [519] at 521 [94 L.Ed. 734 (1950) ]. Absent the requisite nexus-that the challenged affiliation will "prevent or substantially impair" a juror's impartiality-no juror may be excluded for cause on the basis of his or her membership in an organization that adheres to a particular view. Failure to make the necessary inquiry deprives the trial court of the benefit of the factual predicate that justifies an exclusion for cause. In the words of Mr. Justice Murphy in *Thiel v. Southern Pacific Co.,* 328 U.S. 217, 220, 66

S.Ct. 984, 985, 90 L.Ed. 1181 (1946), uttered over forty years ago, the conduct of the trial judge and the position urged by the government today would "open the door" to class distinctions and discriminations which are abhorrent to the democratic ideals of trial by jury.

*United States v. Salamone, supra* at 1226 (footnotes omitted).

By a similar process of reasoning, we conclude that a prospective juror is not subject to being challenged for cause in a rape trial merely because of membership in an organization such as Women Organized Against Rape. Opposition to rape, after all, is a sentiment shared by a vast majority of right thinking persons. To express such a sentiment militantly or to join an organized group of persons who share the same sentiment does not necessarily render a person incapable of weighing evidence impartially to determine whether a rape has occurred in fact or whether the person accused is in fact the person who committed the act. Cf. *Commonwealth v. Hook,* 300 Pa.Super. 181, 446 A.2d 290 (1982) (trial counsel not ineffective for failing to challenge for cause three jurors who signed an anti-rape petition shortly before defendant's trial); *Commonwealth v. Henderson,* 275 Pa.Super. 350, 418 A.2d 757 (1980) (trial court did not abuse its discretion by denying challenge for cause where juror had disclosed that her granddaughter had been a rape victim, where juror also stated that she could be absolutely fair to the defendant). More important than membership in an organized group is whether a prospective juror can put aside any bias which he or she may have and render a verdict based solely on the evidence presented at trial. See: *Commonwealth v. Colson, supra.* This determination must be made by the trial court according to the prospective juror's answers and demeanor during voir dire. *Id.*

In the instant case, the trial court asked all venirepersons the following questions:

"[I]s there anyone here that knows me, the attorneys, the defendant, any of the court officers or any of the possible witnesses?"

"Is there anyone here who has any close friends, relatives or inlaws who are in law enforcement or the court system?"

"Is there anyone here who has, themselves been a victim of violence or do you have a close friend, relative or inlaw who has been a victim of violence?"

"[I]s there anyone here who has heard or read anything about this case before coming to the courtroom?"

"Is there anyone here who feels that a defendant is guilty merely because he has been charged with a crime?"

"Is there anyone here who would hold it against the defendant if he does not testify or does not present a defense?"

"Is there anyone here who will believe a police officer more than another person merely because that person is a police officer?"

"Is there anyone here who would not be able to follow any instructions as to the law, even if you do not agree with it?"

"Now, the defendant, the police officer and the witnesses may be of a different race from each other or from you. Would that cause anyone here to be partial or unfair?"

"Is there anyone here who cannot [be] fair and impartial for any reason best known to yourself?"

"Is there anyone here who, because of religious scruples or beliefs, feels those religious scruples or beliefs will prevent them from rendering a judgment for or against another person?"

After a panel of twenty-four prospective jurors had been seated in the jury box, the court asked each of them, individually, the following questions:

"[W]ill you listen to all of the evidence and will you make your decision on the basis of that evidence and not on the basis of sympathy, favoritism, or prejudice?"

"Will you be able to follow my instructions on the law regardless of your own beliefs?"

"Will you be fair and impartial if you are picked to serve on a jury?"

"[C]an you tell us in which section of the City you live and for how long?"

"And if you live with any other people are any of those people involved in law enforcement?"

"Can you tell us your type of employment you have and for how long you have had that type of employment?"

"And your age, and how far did you go in school?"

Having reviewed the voir dire proceedings in the instant case, we conclude that the questions asked of prospective jurors by the trial court were adequate to ensure that appellant would be tried before a competent, fair, impartial and unprejudiced jury. This was all that appellant was entitled to receive. See: *Commonwealth v. Robbins, supra.* See also: *Commonwealth v. Lark,* 350 Pa.Super. 558, 565–566, 504 A.2d 1291, 1295 (1986). In view of the questions asked, the trial court did not abuse its discretion by refusing to ask, in addition, whether prospective jurors were members of Women Organized Against Rape. The questions asked of prospective jurors were adequate to protect appellant's right to be tried by a fair and impartial jury. See: *United States v. Joe,* 831 F.2d 218, 221 (10th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1043, 98 L.Ed.2d 1006 (1988) (district court did not abuse its discretion by refusing to ask prospective jurors about their familiarity with the crime scene, their possible association with rape crisis and alcohol victim centers, and the possibility that jurors might have a daughter the victim's age where the questions which the court did ask combined with its instructions to the jury were adequate to protect the defendant against prejudice).

■ In reviewing jury instructions to determine whether reversible error has been committed by a trial court, we consider the charge as a whole. Error will not be predicated on isolated excerpts. Rather, it is the general effect of the charge that controls. *Commonwealth v. Mason,* 358 Pa.Super. 562, 580, 518 A.2d 282, 291 (1986); *Common-*

*wealth v. Sweger,* 351 Pa.Super. 188, 194, 505 A.2d 331, 334 (1986).

■   The trial court instructed the jury, in part, as follows: In order to find the defendant guilty of possessing a criminal instrument you must be satisfied that the following elements have been proven beyond a reasonable doubt. *First, that the defendant pocessed [sic] a certain item, in this case that would be the scissors.* And second, that the item was an instrument of a crime, and that the defendant pocessed [sic] the item with intent to employ it criminally.   That is, with intent to commit a crime with it.

Now, an instrument of a crime is anything specially made or specially adapted for criminal use.   Or anything commonly used for criminal purposes and pocessed [sic] by the defendant under circumstances not manifestly appropriate for the lawful use it may have.   For a person to possess an item, he must have the power to control and the intent to control that item.

Now, if you are satisfied that the elements of possessing a criminal instrument have been proven beyond a reasonable doubt, then you must find the defendant guilty.   Otherwise, you must find the defendant not guilty of this crime.   (emphasis added).

At the conclusion of the charge, in response to a request by the prosecuting attorney, the trial court further instructed the jury as follows:

I would point out to the ladies and gentlemen of the jury in this case, the butcher knife could also be a possession of an instrument of a crime.   If you believe that under the rules that I gave you, that the defendant possessed that, and if, in fact, it is an instrument of a crime as I have defined that for you, and you believe that beyond a reasonable doubt, then the same would pertain.

Appellant contends that it was error to instruct the jury that it could find him guilty of possessing an instrument of crime if it found that he had had a pair of scissors in his possession.   We are constrained to agree.

Possessing an instrument of crime is made criminal by the provisions of 18 Pa.C.S. § 907(a) as follows:

(a) **Criminal instruments generally.**—A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

Instrument of crime is defined in 18 Pa.C.S. § 907(c) as follows:

(c) **Definitions.**—As used in this section the following words and phrases shall have the meanings given to them in this subsection:

"**Instrument of crime.**"

(1) Anything specially made or specially adapted for criminal use; or

(2) Anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

A pair of scissors does not fit within either definition. In *Commonwealth v. Taylor*, 362 Pa.Super. 408, 524 A.2d 942, *allocatur denied*, 516 Pa. 640, 533 A.2d 712 (1987), the Court reasoned:

The Legislature has established two alternative criteria for determining whether an object is an instrument of crime: the object must either be one which is regularly used by criminals or it must be one which is physically altered in such a fashion as to demonstrate a criminal objective. *Commonwealth v. Rodriquez*, 316 Pa.Superior Ct. 203, 462 A.2d 1310 (1983). A review of the case law leads us to agree that an ice pick and a pair of scissors may not fit within the statutory definition of an instrument of crime. See e.g., *Commonwealth v. Durrant*, 501 Pa. 147, 460 A.2d 732 (1983) (a pool cue does not fit within the statutory definition of an instrument of crime); *Commonwealth v. Rodriquez, supra* (an ordinary razor blade is not an instrument of crime); *Commonwealth v. Aycock*, 323 Pa.Superior Ct. 62, 470 A.2d 130 (1983) (18″ long piece of channel steel is not an instrument of crime).

*Id.,* 362 Pa.Superior Ct. at 422, 524 A.2d at 949. We agree with this reasoning. A pair of scissors is not specially made or specially adapted for criminal use; neither is it commonly used for criminal purposes. It is commonly used for a myriad of lawful purposes, ranging from the home to the workplace or office. A person does not commit a crime merely by possessing a pair of scissors, and this is so irrespective of the circumstances under which possession is obtained or retained.

In *Commonwealth v. Taylor, supra,* the Court held that trial counsel had not been ineffective for failing to object to a general instruction to the jury which defined an instrument of crime and left it to the jury to determine whether a knife, a pair of scissors, and an ice pick in the possession of the defendant were in fact instruments of crime. The court reasoned that even though an ice pick and a pair of scissors could not be instruments of crime, the trial court's definition of an instrument of crime was correct and, because the knife could be found to be an instrument of crime, the defendant had not been prejudiced by counsel's failure to object to the instruction.

In the instant case, however, we are not concerned with a claim that counsel was ineffective. The trial court's instruction referred specifically to the scissors and told the jury that if appellant had scissors in his possession, he could be found guilty if the item were found to be an instrument of crime and if he possessed it with the intent of employing it criminally. At the conclusion of the trial court's instructions to the jury, defense counsel objected to the court's instruction on the specific grounds that "scissors cannot be an instrument of crime." The trial judge expressed his disagreement and rejected the defense objection. It was then that the prosecuting attorney requested an instruction to the effect that the knife could also be found to be an instrument of crime.

It is apparent from the entirety of the trial court's instructions that the jury was permitted to find appellant guilty of possessing an instrument of crime if he possessed

either scissors or a knife. This was error. A pair of scissors cannot be found to be an instrument of crime, and the jury should not have been instructed that it could find otherwise.

■ The record does not enable this Court to determine that the trial court's erroneous instruction did not contribute to the jury's verdict. On the record before us it appears that the jury may well have concluded that appellant's possession of the scissors was a violation of the statute which made it criminal to possess an instrument of crime. Because the trial court's erroneous instruction may have contributed to the verdict, a new trial on this charge must be granted. See: *Jones v. Montefiore Hospital*, 494 Pa. 410, 420, 431 A.2d 920, 925 (1981); *Vaughn v. Philadelphia Transportation Co.*, 417 Pa. 464, 468, 209 A.2d 279, 282 (1965); *Hoffman v. Memorial Osteopathic Hospital*, 342 Pa.Super. 375, 382, 492 A.2d 1382, 1386 (1985).

The judgments of sentence imposed for rape and kidnapping are affirmed. The judgment of sentence for possession of an instrument of crime is reversed, and with respect to the information charging such offense a new trial is granted. Jurisdiction is not retained.