583 A.2d 1208

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Edward S. WILCOX, Appellee.**

Superior Court of Pennsylvania.

Argued May 9, 1990.

Filed Dec. 18, 1990.

Richard A. Linzer, Deputy Atty. Gen., Greensburg, for Com.

John M. Purcell, Uniontown, for appellee.

Before WIEAND, DEL SOLE and HESTER, JJ.

WIEAND, Judge.

Edward Wilcox, a pharmacist, was tried by jury and was found guilty of fraudulently misrepresenting to the Department of Welfare the nature of drugs dispensed, this being a violation of the Fraud and Abuse Control Act of June 13, 1967, P.L. 31, as amended, 62 P.S. § 1407(a)(7).[1] The trial court subsequently arrested judgment, believing that the Commonwealth had failed to show beyond a reasonable doubt that it had been Wilcox who had submitted the misinformation. The Commonwealth appealed. After careful review, we reverse.

■ Upon appeal by the Commonwealth from an order arresting judgment, a reviewing court

must determine whether the evidence offered by the Commonwealth was legally sufficient to support the verdict. *Commonwealth v. Froelich*, 458 Pa. 104, 326 A.2d 364 (1974). To reach this determination, we accept all of the evidence and all reasonable inferences therefrom,

---

**1.** Wilcox was acquitted of charges under the Generic Equivalent Drugs Act of November 24, 1976, P.L. 1163, No. 259 § 3, 35 P.S. § 960.3(a), and the Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P.L. 233, No. 64, § 13, as amended, 35 P.S. § 780–113(a)(7).

upon which the fact-finder could have based the verdict; we can affirm the granting of a motion in arrest of judgment if, viewed in that manner, the evidence was nonetheless insufficient in law to find guilt beyond a reasonable doubt as to the crime[ ] charged. *Commonwealth v. Blevins,* 453 Pa. 481, 309 A.2d 421 (1973). We must view the evidence in the light most favorable to the Commonwealth. *Commonwealth v. Hazlett,* 429 Pa. 476, 240 A.2d 555 (1968).

*Commonwealth v. Robinson,* 351 Pa.Super. 309, 311–312, 505 A.2d 997, 998 (1986), quoting *Commonwealth v. Nelson,* 245 Pa.Super. 33, 36, 369 A.2d 279, 280 (1976), *aff'd,* 476 Pa. 269, 382 A.2d 715 (1977).

The same standard is applicable in cases, such as the instant case, where [some or all of the evidence] supporting a conviction "is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Hardcastle,* 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988). See also: *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977); *Commonwealth v. Petrisko,* 442 Pa. 575, 579–580, 275 A.2d 46, 49 (1971). There is no requirement that the Commonwealth exclude all possibility that a third party may have committed the crime. See: *Commonwealth v. Sullivan, supra* [472 Pa.] at 152–153, 371 A.2d at 479; *Commonwealth v. Kravitz,* 400 Pa. 198, 212–213, 161 A.2d 861, 868 (1960), *cert. denied,* 365 U.S. 846, 81 S.Ct. 807, 5 L.Ed.2d 811 (1961).

*Commonwealth v. Akers,* 392 Pa.Super. 170, 181, 572 A.2d 746, 751 (1990).

Section 1407 of the Fraud and Abuse Control Act provides in pertinent part:

§ 1407. **Provider prohibited acts, criminal penalties and civil remedies**

(a) It shall be unlawful for any person to:

. . . .

(7) Submit a claim which misrepresents the description of services, supplies or equipment dispensed or provided; the dates of services; the identity of the recipient; the identity of the attending, prescribing or referring practitioner; or the identity of the actual provider.

Act of June 13, 1967, P.L. 31, § 1407, as amended, 62 P.S. § 1407(a)(7).

The background for this prosecution was described in the opinion of the learned trial judge as follows:

The defendant, Edward S. Wilcox, is the sole owner of Redstone Pharmacy located at 11 Main Street, Republic, Fayette County, Pennsylvania. Redstone Pharmacy has been a pharmaceutical provider enrolled in the Pennsylvania Department of Public Welfare (hereinafter "DPW") Medical Assistance Program since 1984. (N.T. 3/6/89, at 6) Under this program, pharmacists sign an agreement with the Office of the Medical Assistance Program under which pharmacists provide pharmaceutical supplies and medications to recipients of public assistance and accept a fee from the Medical Assistance Program as payment in full for their services. (N.T. 3/6/89, at 3, 8–9) Once a provider renders a service to a medical assistance recipient, he completes a medical assistance invoice and submits it to the DPW Claims Processing Center in Harrisburg. The invoice is scanned for the presence of the provider and recipient signatures before it is microfilmed, assigned an identifying number, and processed through the computer system. (N.T. 3/6/89 at 12) If the claim is approved, a treasury tape is forwarded to the Pennsylvania Department of Treasury where a check is generated and mailed to the provider along with a remittance statement. (N.T. 3/6/89, at 13)

At trial, testimony was received from Marian G. Baker, who is employed by the DPW in the Bureau of Quality Assurance as Supervisor of the Pharmacy Review Section. (N.T. 3/6/89, at 62) Mrs. Baker testified that the Bureau of Quality Assurance is the agency which monitors medical assistance providers for compliance with the

regulations promulgated in connection with the Medical Assistance Program. (N.T. 3/6/89, at 61) Mrs. Baker further stated that in March, 1986, an investigation of the Redstone Pharmacy was undertaken. She testified that she visited the pharmacy in March, 1986 and reviewed 15,000 prescription forms which had been received by the pharmacy from its customers in exchange for the pharmaceutical supplies and drugs ordered by various physicians during the period from 1984 until March, 1986. (N.T. 3/6/89, at 67) During this review of prescription forms and comparison with paid medical assistance invoices, some discrepancies were found.

These discrepancies prompted Mrs. Baker and her associate, John B. Hocker, to interview 26 DPW medical benefit recipients. (N.T. 3/6/89, at 67; 3/8/89, at 173–176) After the on-site visit to the Redstone Pharmacy and the homes of the 26 DPW medical benefit recipients, an indictment was filed against this defendant, Edward S. Wilcox.

The evidence established that between 1984 and 1986 several medical assistance recipients had had prescriptions filled at the Redstone Pharmacy which contained generic equivalents for the brand name drugs submitted to the Department of Public Welfare for payment. Wilcox was the sole owner of the pharmacy, and his signature appeared on the claims submitted to the Department for payment. Although some signatures may have been affixed by use of a rubber stamp, this evidence was nevertheless sufficient to permit an inference that Wilcox was criminally liable for violating the statute.

Wilcox offered in defense the fact that he had employed other pharmacists who, from time to time, had completed claim forms for submission to the Department and had affixed his signature thereto. From this evidence the jury might have found Wilcox innocent of a knowing attempt to defraud. If pharmacists employed by Wilcox mistakenly or fraudulently submitted false claims without Wilcox's knowledge or complicity, criminal responsibility should not be

imposed upon him vicariously for the conduct of his employees. Whether the defense evidence was credible and whether inferences of innocence were to be drawn therefrom, however, were issues of fact for the jury. It was for the jury to determine whether it believed the testimony of the defense witnesses and whether Wilcox's stamped signature had been affixed to false claims by employees without Wilcox's knowledge or complicity. If it rejected this testimony as not credible, the evidence that false claims had been submitted over appellant's signature was sufficient to warrant a finding of guilt.

Although we agree that the trial court erred in reversing the findings of the jury, we reject the Commonwealth's argument that Wilcox can be held criminally responsible vicariously for any and all erroneous information contained in claims submitted by employees, even though he had no knowledge that false information was being submitted. Recently, the Supreme Court discussed the mens rea of the offense in *Commonwealth v. Lurie*, 524 Pa. 56, 569 A.2d 329 (1990), as follows:

> Subsection (a)(7) of § 1407 makes it unlawful to submit a claim which misrepresents the service or merchandise delivered, the date or dates of delivery, the identity of the person or persons who received the services or merchandise, the identity of the provider, etc. Again, it is fundamental that to purposely misrepresent any of the information described in subsection (a)(7), is to knowingly present a false or fraudulent claim for payment. *On the other hand, a claim which recklessly or negligently misrepresents any of the described information does not involve a knowing presentment of a fraudulent claim and is not accorded criminality.*

*Id.*, 524 Pa. at 61–62, 569 A.2d at 331–332 (emphasis added). From this and also from a reading of the statute,[2] it is

**2.** Section 1407(a)(1) provides that it shall be unlawful to
(1) Knowingly or intentionally present for allowance or payment any false or fraudulent claim or cost report for furnishing services or merchandise under medical assistance, or to knowingly present

eminently clear that criminal responsibility attaches only to the knowing or intentional submission of false claims and not to misinformation which is submitted negligently or without the knowledge or complicity of a person whose signature has been affixed by stamp.

In its opinion, the trial court made reference to a jury instruction which, on reflection, it deemed erroneous. The relief for an erroneous jury instruction, however, is the award of a new trial. See: *Jones v. Montefiore Hospital,* 494 Pa. 410, 420, 431 A.2d 920, 925 (1981); *Vaughn v. Philadelphia Transportation Co.,* 417 Pa. 464, 468, 209 A.2d 279, 282 (1965); *Commonwealth v. Myers,* 376 Pa.Super. 41, 54, 545 A.2d 309, 315 (1988); *Hoffman v. Memorial Osteopathic Hospital,* 342 Pa.Super. 375, 382, 492 A.2d 1382, 1386 (1985). An erroneous jury instruction, even if adequately preserved by timely objection, does not warrant an arrest of judgment. Cf. *Commonwealth v. Allen,* 13 Lycoming 50 (1974) (arrest of judgment limited to errors appearing on face of record or sufficiency of evidence); *Commonwealth v. Mock,* 49 Berks 183 (1957) (motion in arrest of judgment has no basis where it challenges court's charge to the jury). In this case, moreover, the record is clear that the defendant did not object to the instruction which the court deemed erroneous. It seems clear, therefore, that the jury instruction deemed erroneous by the trial court was not a proper basis for arresting judgment. Consequently, we assume that the trial court's reference to a possibly incorrect jury instruction was an attempt to explain a verdict with which the trial court disagreed and not an explanation for its order arresting judgment.

We express no opinion on appellee's post-trial assertion that the verdict was so contrary to the weight of the

for allowance or payment any claim or cost report for medically unnecessary services or merchandise under medical assistance, or to knowingly submit false information, for the purpose of obtaining greater compensation than that to which he is legally entitled for furnishing services or merchandise under medical assistance, or to knowingly submit false information for the purpose of obtaining authorization for furnishing services or merchandise under medical assistance.

evidence as to require a new trial. This and other issues were raised in a defense motion for new trial and not considered by the trial court because of its decision to arrest judgment. Upon remand, the trial court should consider and decide issues which remain undetermined in the motion for new trial.

The order arresting judgment is reversed, and the case is remanded for a determination of appellee's motion for new trial. Jurisdiction is not retained.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting:

While I agree with the majority that the questions of whether the defense evidence was credible and whether inferences of innocence were to be drawn therefrom, were issues of fact for the jury, I must nevertheless agree with the trial court that the Commonwealth failed to offer evidence from which the jury could conclude beyond a reasonable doubt that Appellee knowingly submitted fraudulent claims to the Department of Public Welfare (DPW), and therefore would affirm the trial court's arrest of judgment.

A jury convicted Appellee of seven counts of violating the Welfare Fraud and Abuse Act, 62 Pa.C.S. § 1407(a)(7) which in pertinent part states:

(a) It shall be unlawful for any person to:

. . . .

(7) Submit a claim which misrepresents the description of services, supplies or equipment dispensed or provided; the dates of services; the identity of the recipient; the identity of the attending, prescribing or referring practitioner; or the identity of the actual provider.

In discussing the mens rea of the offense of violating Subsection (a)(7) of § 1407, the Pennsylvania Supreme Court recently stated:

... Again, it is fundamental that to purposely misrepresent any of the information described in subsection (a)(7), is to knowingly present a false or fraudulent claim for

payment. On the other hand, a claim which recklessly or negligently misrepresents any of the described information does not involve a knowing presentment of a fraudulent claim and is not accorded criminality.

*Commonwealth v. Lurie*, 524 Pa. 56, 569 A.2d 329, at 332 (1990). As the majority notes, it is eminently clear that criminal responsibility attaches only to the knowing or intentional submission of false claims and not to misinformation which is submitted negligently or without the knowledge or complicity of a person whose signature has been affixed by a stamp.

In light of the language of the statute, it is initially necessary to review the testimony and determine if the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that Appellee submitted any improper claims.

My review of the testimony convinces me that the evidence failed to establish Appellee personally prepared, signed and submitted the medical invoices in question. Testimony from seven DPW medical benefit recipients showed that Appellee was not the sole pharmacist dispensing medications from his pharmacy during the period in question. Two clerks, employed at the pharmacy stated they had filled out invoices which were submitted to the DPW and had either signed Appellee's name or used a signature stamp embossed with Appellee's signature, and had seen other pharmacists completing invoices and affixing the signature stamp. A Certified Public Accountant qualified as an expert, testified that the fourteen errors discovered out of fifteen thousand prescriptions reviewed, is an error rate of less than one-tenth of one percent. (N.T. at 320). Furthermore, a pharmacist called by the Commonwealth testified that the total dollar value difference between the brand medications and the generic drugs substituted was less than one hundred dollars. (N.T. at 210).

It is the burden of the Commonwealth to prove Appellee knowingly submitted fraudulent claims to the DPW. From my thorough review of the record I can discern no evidence

that would establish Appellee submitted claims with the knowledge they contained erroneous information.

For the foregoing reasons, I would affirm the trial court.